HENRY KNIES, APPELLANT, V. CAROLINE LANG, APPELLEE.

FILED JANUARY 24, 1928. No. 25316.

*Grant G. Martin* and *Bartos, Bartos & Placek,* for appellant.

*Rinaker, Kidd & Delehant, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

EBERLY, J.

This is an action for damages caused by personal injuries alleged to have been suffered by the plaintiff, and of which it is charged that negligence of the defendant was the proximate cause. Among the facts disclosed by the pleadings and evidence are: That the defendant, at the time plaintiff's injuries were sustained, was the owner of a three-story brick building, having a round bay window on the side adjacent to a public street, extending from the second story to the roof; that the sections of this bay window were and are connected by castings or frames; that on April 28, 1925, during a high wind, as plaintiff was passing by, a board was blown from this bay window of which it formed a part, and in descending fell upon the plaintiff, causing the injury set forth in his petition.

Trial was had in the district court to a jury. After plaintiff had introduced his evidence, and finally rested, the defendant orally moved the court to instruct the jury "to find and return a verdict in favor of the defendant and against the plaintiff" on the ground of the insufficiency of the evidence. Thereupon the plaintiff's attorney, before the motion thus presented in behalf of the defendant had been ruled upon, orally submitted the following in behalf

of his client to the consideration of the court: "Comes now the plaintiff, the defendant having made a motion for an instructed verdict, and joins in with him and asks the court to instruct the jury to return a verdict for the plaintiff and against the defendant for the same reasons given by the defendant in her motion." The ruling of the district court that immediately followed this procedure was: "That ends the case; the first motion will be sustained, and the second motion will be overruled."

Thereupon, pursuant to instruction of the district court duly given, the jury returned a verdict in favor of the defendant and against the plaintiff, which verdict was duly and regularly entered in said cause. This was followed by the filing of motion for new trial on part of plaintiff, which was overruled, and from which ruling the plaintiff appeals.

These facts thus appearing in the record necessitate the application of the well-established rule in this jurisdiction that, where both parties to an action ask for a directed verdict, the action of the court in granting one request has the same force and effect as would a verdict of the jury. Neither party can thereafter predicate error on the court's failure to submit the case to the jury. *Adler v. Royal Neighbors of America*, 90 Neb. 56; *Howell v. Bowman*, 89 Neb. 389; *Davison v. Land*, 89 Neb. 58; *Henton v. Sovereign Camp, W. O. W.*, 87 Neb. 552.

The reason which underlies this rule of procedure is set forth in *Segear v. Westcott*, 83 Neb. 515, in the following language: "Where each of the parties to a trial by jury requests the court to charge them to return a verdict in his favor, he waives his right to any finding or trial of the issues by the jury, and consents that the court shall find the facts and declare the law. An acceptance of these waivers and a peremptory instruction by the court in favor of either party constitutes a general finding by the court of every material issue of fact and of law in favor of the successful party. The case is then in the same situation in which it would have been if both parties had filed a

written waiver of a jury and it had been tried by the court. Each party is estopped by his request from reviewing every issue of fact upon which there is any substantial conflict in the evidence, and the only questions which the instruction presents to an appellate court are: Was the court's finding of facts without substantial evidence to sustain it? And was there error in its declaration or application of the law?"

See *United States v. Bishop,* 125 Fed. 181; *Bowen v. Chase,* 98 U. S. 254; *Beuttell v. Magone,* 157 U. S. 154; *Laing v. Rigney,* 160 U. S. 531; *Chrystie v. Foster,* 61 Fed. 551; *Stanford v. McGill,* 6 N. Dak. 536; *Provost v. McEncroe,* 102 N. Y. 650; *Sturmdorf v. Saunders,* 102 N. Y. Supp. 1042; *Aber v. Twitchell,* 17 N. Dak. 229; *Larson v. Calder,* 16 N. Dak. 248.

The controlling question presented and determined in the district court upon the pleadings and the evidence was that of negligence. Upon all the evidence before it, the district court, in the due exercise of its lawful powers, in effect, determined that the defendant had not failed in his duty to the public, of which the plaintiff was one. Accepting, for the purposes of this discussion, plaintiff's contention that the rule of law applicable to this case is, "that it is the duty of the owner of property abutting on a public highway or street to exercise reasonable care to prevent injuries to passers-by from its defective or dangerous condition," wherein does the evidence affirmatively disclose that the defendant has failed to do so?

In this connection it is to be also remembered that in this jurisdiction, upon the issue of negligence, the burden of proof rests upon him who alleges it, and the burden of proof does not shift during the trial. *Spears v. Chicago, B. & Q. R. Co.,* 43 Neb. 720; *Swift & Co. v. Holoubek,* 60 Neb. 784; *Riley v. Missouri P. R. Co.,* 69 Neb. 82; *Lincoln Traction Co. v. Shepherd,* 74 Neb. 369.

Then, too, upon all matters of disputed evidence, and upon all questions presented by the undisputed evidence wherein different and reasonable minds might fairly arrive

at different conclusions as to the issuable facts to be determined, this tribunal is concluded by the findings of the trial court.

At this point we do not overlook plaintiff's contention that the doctrine expressed by the maxim *res ipsa loquitur* is applicable, and the facts in the instant case impose on this court a present duty of defining its position on the principle embodied in this maxim quoted. With this contention we cannot agree. Under the circumstances of this case, even if the extreme construction of the doctrine *res ipsa loquitur* would, in a proper case, receive favorable consideration by this tribunal, it can avail nothing here. In the instant case, all the details of the occurrence are established by plaintiff's own evidence. We know why, as well as how, the unfortunate results were occasioned.

Even in jurisdictions where the maxim quoted has been unequivocally accepted, "The general rule, however, is that, where the evidence adduced is equally consistent with the absence as with the existence of negligence in the defendant, the case ought not to be left to the jury; and the maxim, *res ipsa loquitur*, ought not to be applied unless the facts proved are more consistent with negligence in the defendant than with a mere accident." Broom, Legal Maxims (8th ed.) 254. See, also, *McAnany v. Shipley*, 189 Mo. App. 396.

So, also, "Where the evidence shows the precise cause of the accident, * * * there is of course no room for the application of the doctrine of presumption." *Cassady v. Old Colony Street R. Co.*, 184 Mass. 156, 163.

"A plaintiff, suing for injuries by being struck by a board falling from a building while passing along the sidewalk, and showing by his evidence that the board had been loose for a long time, and demonstrating just how and why the accident happened, and exhibiting at the trial the board, showing that the nails were old and rusty, cannot rely on the doctrine of *res ipsa loquitur*, though the petition charges general negligence only; and a charge, giving him the benefit of the presumption arising from the doctrine, is

reversible error." *McAnany v. Shipley,* 176 S. W. 1079 (189 Mo. App. 396).

The conclusion follows that the nature of the evidence before the district court imposed the duty of determining the issues involved in the case without reference to the presumption embodied in the maxim under discussion.

In the light of the principles just enumerated, the evidence may be said fairly to sustain the following: The board that caused the accident was sound and undecayed. It was put in place as part of the original construction 35 years ago, and during all the time that elapsed since that time up to the date of the accident remained in place. At the time of the original construction, the ends of this board were fitted to other construction of the building so that they were not exposed or accessible to paint, and the board was well fastened to the building by iron nails. Nothing in the record is to the contrary, and, indeed, it appears as unquestioned that the building, including the bay window, was well and solidly constructed at the time it was built. The record does not disclose that it was ever permitted to fall into dilapidation and decay. In fact, a fair inference to be drawn from the evidence is, that the building itself, considered as an entirety, omitting from consideration the board in question, was at the time of the accident, and had been prior thereto, in proper state of repair. Indeed, the district court, in view of the facts before it, might well have reached the conclusion that the board causing the injury, in place in the construction of which it formed a part, was in plain view of the street and at such distance as permitted a proper and reasonable examination and inspection; that it was, in fact, under the daily and constant observation of occupant of the building, the defendant, not only from the street, but "off and on" close at hand from the interior; and that these inspections, frequently and carefully made, disclosed no evidence of displacement, lack of repair, decay or defect in the board itself, or in the nails that held it in place. And it must be admitted that, so far as disclosed by the record before us,

none of the many passers-by on this busy corner ever made any such discoveries or called attention to anything requiring attention in the maintenance of this building.

The accident occurred. The high wind tore off the board. It fell to the sidewalk. Plaintiff was injured. Then, it was first ascertained that on the under or inner side of this board, the one next to the building, the nails which secured it to the building, and which on its outer surface disclosed no defects, were, in fact, rusted off. But the evidence also supports the inference that immediately prior to the accident the outside of the construction, of which the board formed a part, and, indeed, the board itself, were in place, and appeared solid, substantial, and sound. The defects which, developing with passing time, caused the accident were at all times hidden and latent, and not discernable or discoverable, unless, in fact, the board had been actually removed from the building for the purpose of examination.

In this view of this situation, what were the demands of ordinary care? Certainly, such demands should not be in excess of the care that a prudent man who was not an expert in mechanics or in construction might be reasonably called upon to exercise. Latent defects which are concealed, and an incident to ordinary wear and tear, and so developed as to render discovery impossible, in the exercise of ordinary care, are casualties which no man can avoid without the exercise of extraordinary care and vigilance which the law does not impose. The defendant's full duty extended no further than to use reasonable care and prudence in keeping his building safe for persons rightfully entering it or passing by it.

Indeed, the record contains no evidence as to what precautions even a qualified expert on construction, maintenance and repair of building would have deemed necessary under the circumstances, or that such expert in determining the true condition of the materials in place would have applied any tests, or made any other further or different examination than from the evidence the district court was justified in finding were made by the defendant.

The district court heard the evidence, applied this rule evidently, and determined the questions involved adversely to the claims of the plaintiff. We cannot say from the record before us that it affirmatively appears that in so doing the district court erred. Therefore the duty is imposed upon us as a reviewing tribunal to affirm the judgment of the court below.

The judgment of the district court is

AFFIRMED.