KATHLEEN BATTERMAN, APPELLANT, v. EDGAR W. RICHARDSON, APPELLEE.

202 N. W. 2d 613

Filed December 1, 1972. No. 38403.

Nelson, Harding, Marchetti, Leonard & Tate, Kenneth Cobb, J. S. Berry, and Richard H. Williams, for appellant.

Baylor, Evnen, Baylor, Curtiss & Grimit, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

The jury returned a verdict for the defendant in this action for damages as a result of a rear-end automobile collision accident occurring on September 3, 1968, at 39th and Van Dorn Streets in Lincoln, Nebraska. The trial court instructed the jury that the defendant was negligent as a matter of law and submitted to the jury only the issues of what injuries, if any, were proximately caused by the defendant's negligence, and the amount of the damages. The plaintiff appeals, claiming passion and prejudice on the part of the jury, and that the verdict was so clearly wrong it cannot stand. These contentions were presented to the district court on motion for a new trial and were overruled. We affirm the judgment of the district court.

The only issue argued on appeal is the sufficiency of the evidence to sustain the verdict. As stated in the traditional language of our cases dealing with this issue the question involved here is whether the verdict was so clearly against the weight of the evidence as to induce this reviewing court to believe that it was the result of passion, prejudice, mistake, or some means not apparent in the record. See, Garfield v. Hodges & Baldwin, 90 Neb. 122, 132 N. W. 923; Pospichal v. Wiley, 163 Neb. 236, 79 N. W. 2d 275; Friesen v. Reimer, 124 Neb. 620, 247 N. W. 561.

We observe that the instructions to the jury, the competency of the witnesses and the foundation for their testimony, and the conduct of the jury are not in any way questioned in this appeal. Consequently, we must come to the conclusion, if we accept the plaintiff's contentions, the verdict was so clearly wrong that we can say as a matter of law the jury disregarded the instructions and clearly returned a verdict for the

defendant when reasonable minds could come to no other conclusion under the evidence that a verdict for the plaintiff was compelled.

Approaching an examination of the evidence in this case we observe, as usual, that the controversy centers primarily around the conflict in the expert testimony between the two expert medical witnesses. Broadly characterized, the plaintiff claims an injury to the neck and the back as a proximate result of the collision, and injury to the knees. The evidence discloses that the plaintiff's right knee had been injured prior to the time of the accident and had been treated by her orthopedist, Dr. Goetowski in January 1967. At that time her doctor diagnosed the problem as an impacted fracture and chondromalacia, a *progressive disease process*. He testified that his treatment improved the condition, but that it continued thereafter. This situation related to her *right knee*. The evidence shows that the plaintiff next saw her doctor on September 9, 1968, *6 days* after the accident when she complained of pain in her neck and *left knee*. The injury to her right knee, treated on January 6, 1967, prior to the accident was with relation to a green stick fracture of the right leg at the base of the knee. The first time the plaintiff complained of her right knee was on October 23, 1968, when she visited her doctor. He treated her with cortisone, "thought she was showing reasonable progress," and did not anticipate any measurable residual. More than a year later the plaintiff visited her doctor on January 15, 1970. X-rays revealed a continuing and progressive condition in her right knee. In June 1970, the doctor injected the knee with cortisone again and stated as his opinion that the condition of the right knee was aggravated by the accident and that she had a 25 to 35 percent permanent partial residual disability of the right knee.

Her doctor stated that whatever right knee injury the plaintiff might have received at the time of the

accident had nothing to do with her joint complaints elsewhere in her body. He also stated that a person having arthritis and suffering a trauma may often have an aggravating influence from the trauma, meaning that it speeds up a dormant situation and makes it active. He also stated that he could find no evidence of this being true in the plaintiff's case. Very significant is his testimony as to permanent partial disability of the body as a whole. He estimated this to be 10 to 15 percent and stated that this was based upon all causes occurring before the accident and afterwards. He stated that it is very difficult to get an honest apportionment of disabilities between those caused by the accident and those not caused by it. Her doctor did not make any test to determine whether or not she was arthritic but did state that she had pain in many joints, which is a finding compatible with arthritis as well as injury from trauma.

The fundamental issue in this case is not the issue of some disability on the part of the plaintiff but whether it was proximately caused by the accident. The questions of direct causation by the accident, contribution or aggravation of her previous knee injury, and the effect of a general arthritic or inflammatory process were issues for the jury to determine. The uncertain nature of the plaintiff's own medical testimony can be illustrated by the following testimony her doctor gave on cross-examination as follows:

"Q Her condition then might or might not include arthritis is that what you're saying? A Yes. Q Did you ever make any test to determine whether or not she's arthritic? A No, sir. This would require a rather extensive checkup, both blood chemistry and the like, and I didn't think it would give us enough information to be worthwhile. Q Specifically, did you ever do a test called, on Mrs. Batterman, called a rheumatoid agglutination test? A No, sir. Q She has had pain in many joints, has she not? A Yes. Q That's a

finding compatible with arthritis as well as injury, is it not? A Yes. Q Would you suspect some possible history of arthritis from a history of joint distress recently or spontaneously without injury? A You may anticipate some arthritic symptoms without injury, yes, sir. Q. If she's had arthritic difficulty or joint distress due to arthritis in some joints could it not be present in other joints as well? A Yes, sir. Q Including the knees? A Yes, sir. Q Both? A Yes, sir. Q Now Doctor, will an injury of a joint cause the onset in your opinion of disease processes in other joints? A Not ordinarily, no, sir. Usually, it's to the specific joint involved. Q In that case then whatever right knee injury Mrs. Batterman received at the time of the automobile accident had nothing whatever to do with her joint complaints elsewhere? A In my opinion, no, sir. Q Yet, as I understand from what you said just a minute ago, those joint complaints elsewhere in the absence of any causative injury could be due to arthritis which might also be affecting the knee joint, is that correct? A Yes, sir."

We summarize the testimony of the defendant's expert witness. It is generally to the effect that the plaintiff had no permanent disability except for the right knee. Dr. Getscher also found that the plaintiff had an infection or disease process going on which was determined by a C reactive protein test for nonspecific inflammation in joints. The results of the test were positive. The evidence also showed that the plaintiff suffered a continuing number of subjective complaints with respect to joint difficulties, for example, her left elbow was X-rayed on June 16, 1970; her finger on her right hand was treated on November 26, 1969; and she had pain in her right shoulder and some other joints at various other times.

Specifically with reference to the claim of neck injuries, Dr. Goetowski testified that he took no X-rays of her neck in 1970 and stated that the plaintiff made

no complaint referable to the neck. It is clear from reading the whole record that the opinion testimony of Dr. Goetowski and Dr. Getscher rested almost entirely upon the *subjective* oral complaints by the plaintiff herself. An examination of portions of her testimony reveals a confusing and contradictory statement of her complaints. For example, the plaintiff testified as follows: "Q Now, what about these headaches that you have mentioned. Have they cleared up and gone away? A Yes, I think so. Q Do you get any headaches when you sew? A Yes. Q Now, wait a minute. You said you thought they cleared up. A Well, I don't get a headache. I just get bothered when I sew or iron or have my head down." And the following testimony of the plaintiff herself is illuminating: "Q Now, during this period of time, what about movement for the first, oh, few months there? Did it hurt to move your head? A Yes. Q If so, whereabouts? A It bothered me, like I say, when I sew or have my head down or to read or even standing doing dishes. Q Are you talking about now? A No. Q Does it bother you to do those things now? A Well, somewhat. I know it's there, especially, sewing or ironing or something where I have to have my head down. Q In other words, if you hold your head up straight it doesn't bother you. A No, it doesn't bother me then. Q But if you tip your head—Is it looking down, is this when it bothers you? A Yes. Q Where does it bother you? A In the back of my neck at the base of this bone here, mainly, and then over into my right side. I don't know what it is. It's bothering me. Q Describe it. A Well, just, I just have a severe pain. I don't know what it is, I haven't—I have had it X-rayed here recently, but just a kind of arthritic condition is what it looks like on the X-rays. * * * Q Has there been any time since this accident that your neck has been completely pain free? A No. * * * A * * * I just get bothered when I sew or iron or have my head down. Q Is this when your

neck bothers you? A Yes. Q Can you turn your head and look down your shoulder? A Yes. Q Can you put your chin down on your chest? A Yes. Q How does it feel when you do this? A Just a slight pulling and tenderness in there. Q Is your neck sore to touch? A No. Well, my right side bothers me, but, like I say, I don't know what this is from."

We review the evidence in this case in the light of several fundamental principles which make the solution clear. A jury is not required to accept as absolute verity every statement of a witness not contradicted by direct evidence. Satterfield v. Watland, 180 Neb. 386, 143 N. W. 2d 124. The persuasiveness of evidence may be destroyed even though not contradicted by direct evidence. Meadows v. Skinner Manuf. Co., 178 Neb. 856, 136 N. W. 2d 184. It is fundamental in our adversary system that a jury alone is the sole judge of the credibility of the witnesses and of the *weight* to be given to their testimony. We have said many times that a jury has the right to test the credibility of witnesses by their self-interest and to weigh disputed parol testimony against all the other facts and circumstances in evidence from which a conclusion may properly be drawn that the parol testimony is either false or incredible of belief. A substantial conflict may arise even though all the evidence is produced by one party. See Teresi v. Filley, 146 Neb. 797, 21 N. W. 2d 699. More important, the issue in this case is primarily resolved upon the opinions of the experts. The court instructed the jury in this case that it was not required to take the opinions of experts as binding upon it but were only to be used as an aid in coming to a proper conclusion. The court also instructed that it could adopt, or not, the experts' conclusions according to its own best judgment, giving in each instance such weight as the jurors would think should be given under all the facts and circumstances of the case. This instruction is boilerplate law in the State of Nebraska and it is

not challenged for being incorrect by the plaintiff herein. In a very similar case as the one at bar in which a directed verdict on the issue of negligence was given by the court and the jury returned a verdict for the defendant, this court said in pertinent part as follows: "Whether or not plaintiff has sustained damage is a question of fact. Even though there is a direction on liability, the plaintiff must still prove that the negligence on which the direction is given was a proximate cause of the damages alleged to have been sustained by the plaintiff, and must also prove the extent of the damages. * * * The jury is the sole judge on all fact questions. To justify this court in interfering with the findings of a jury on a fact question, the preponderance of the evidence must be so clearly and obviously contrary to the findings that it is the duty of a reviewing court to correct the mistake. * * * In reviewing the evidence herein, we must do so in the light of the fact that the jury verdict was for the defendant. Therefore, the defendant must have the benefit of any and all reasonable inferences deducible from the proof." Beavers v. Christensen, 176 Neb. 162, 125 N. W. 2d 551. We have also said in similar cases involving generally the issue of proof of damages by subjective oral testimony, that the evidence of damages is required to be direct and certain. The proof that damage *might or could have been caused* by the accident is not sufficient to sustain a verdict for a claimant. Such evidence is not of the quality required to satisfy the burden of a claimant to establish by a preponderance of the evidence an injury and the extent thereof. Johnsen v. Taylor, 169 Neb. 280, 99 N. W. 2d 254; Bitler v. Terri Lee, Inc., 163 Neb. 833, 81 N. W. 2d 318.

We are required, in the review of this verdict favorable to the defendant, to resolve all conflicts in the testimony in favor of the defendant together with inferences that may reasonably be drawn therefrom. Considering the rules that we have announced and analyz-

ing the testimony of the plaintiff it is clear the jury could have found that the plaintiff after the accident was not shocked or dazed, or at least was not damaged thereby, since she was able to call the school and her husband immediately and then drove her car to the repair garage. Somebody else called the police. It could find that the plaintiff made no complaint of injury at the accident scene and did not even see a doctor until 6 days after the accident. It could further find that the plaintiff's complaints as to her headaches and as to injuries were confused, inconsistent, and contradictory and not sufficient to sustain the burden of proof to show damages and injuries by a preponderance of the evidence. It could have also found that the plaintiff made no complaint of injury to her right knee until 7 weeks after the accident and her own doctor did not feel that even an X-ray of her knee was necessary until almost 3 years after the accident. More important, in the status of the expert testimony, it could have found that the plaintiff's difficulties were the result of conditions preceding and unrelated to the accident, from the previous injury and such general disease conditions as arthritis, arthralgia, myalgia, bursitis, and chondromalacia. It could have further found that the plaintiff had no permanent disability except to her right knee and that this disability in the right knee was about the same at the time of the trial as it was prior to the accident. It could have further found in this respect that whatever aggravation she may have suffered subsequent to the time of the accident rested on subjective oral recitals it did not believe, and could neither be apportioned in any reasonable sense to the trauma of the accident itself or that it may have been a progressive condition from disease arising from general arthritis and other unrelated conditions.

It is quite apparent in the review of this case that the jury simply did not accept the evidence adduced to show that the plaintiff was indeed injured and en-

titled to damages. The jury is the sole judge of the credibility of the testimony and the weighing of the expert testimony. The evidence or lack of evidence in this case is ample to support the jury verdict and it must be permitted to stand.

The judgment of the district court in overruling the motion for a new trial is correct and is affirmed.

AFFIRMED.