CAROL BEATTY, APPELLEE, V. EMMALINE DAVIS, DECEASED,
APPELLEE, AND ORNAN DAVIS, APPELLANT.

400 N.W.2d 850

Filed February 13, 1987.   No. 85-453.

J.L. Zimmerman, for appellant.

Robert W. Mullin of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

This was an action by the plaintiff, Carol Beatty, to recover damages for the personal injuries she sustained on November 2, 1981, when the defendants' automobile ran over her.

The plaintiff and the defendants, Emmaline Davis and Ornan Davis, were neighbors living in a trailer court in Scottsbluff, Nebraska. On the day of the accident Emmaline Davis, intending to go shopping, started their 1977 Pontiac Bonneville automobile, which was parked in front of their trailer. Realizing that she had forgotten her glasses, Mrs. Davis left the engine running and returned to the trailer. Later, Mrs. Davis told an investigator that she left the gearshift in park

position. After retrieving her glasses and talking with her husband, she returned and found the vehicle traveling in a reverse circular path at idling speed.

At about this time the plaintiff was working in a flowerbed at the rear of her mobile home. When she heard some noise, she came around to the front of her home and discovered the Davis vehicle had struck a yard light near her trailer and was still moving, with no one in control. Seeing the driver's-side door open, the plaintiff attempted to jump in and stop the vehicle. The plaintiff testified that she did so at Mrs. Davis' request and because the plaintiff thought the vehicle might hit Mrs. Davis and her own trailer home. Mrs. Davis denied asking the plaintiff to stop the car.

The plaintiff was able to grasp the steering wheel, but was struck by the open car door, which caused her to fall to the ground. The vehicle then ran over her left knee and lower right leg. She crawled to the safety of the Davis lawn, as the vehicle struck a concrete block wall and finally came to a stop when a block from the wall lodged behind one of the wheels.

The second amended petition alleged that Mrs. Davis' general negligence, the specific acts of which were unknown, was the direct and proximate cause of the accident and the plaintiff's injuries. Mrs. Davis' negligence was alleged to be imputed to her husband, the defendant Ornan Davis, because the automobile was a family purpose automobile. The plaintiff prayed for $8,157.78 in special damages for medical expenses, damages for lost income, and general damages.

The answer denied that Mrs. Davis had put the vehicle in reverse gear or that the defendants had been negligent in any way. The answer also alleged that the plaintiff had assumed the risk as a volunteer and had committed acts of contributory negligence which were more than slight. The defendants also claimed a setoff of $5,099.89 because of medical payments made by their insurance carrier.

Mrs. Davis died prior to trial. The jury returned a general verdict for the plaintiff in the amount of $84,811.20. The defendant Ornan Davis has appealed.

On appeal the defendant contends the trial court erred (1) in overruling his motion for a directed verdict or, alternatively, by

failing to order a mistrial; (2) in failing to give his requested instructions on the duty to mitigate damages and on the duty of a volunteer; (3) in giving instruction No. 9, because it failed to state the necessary elements of the rescue doctrine; and that (4) the judgment is not sustained by sufficient evidence.

The first issue concerns whether the plaintiff's proof went too far in proving specific acts of negligence and therefore eliminated res ipsa loquitur as a means of proving her case.

The doctrine of res ipsa loquitur is that where the instrumentality causing the injury is shown to be under the defendant's exclusive control and management and the accident is one that in the ordinary course of things does not occur if those who have its management or control use proper care, reasonable evidence is afforded, in the absence of an explanation by the defendant, that the accident arose from want of proper care. *Nownes v. Hillside Lounge, Inc.*, 179 Neb. 157, 137 N.W.2d 361 (1965); *Sober v. Smith*, 179 Neb. 74, 136 N.W.2d 372 (1965).

When applicable, the essence of the doctrine is that an inference of negligence arises without further proof, and the facts speak for themselves. *McCall v. St. Joseph's Hospital*, 184 Neb. 1, 165 N.W.2d 85 (1969); *Security Ins. Co. v. Omaha Coca-Cola Bottling Co.*, 157 Neb. 923, 62 N.W.2d 127 (1954). Liability then becomes an issue for the jury. *Security Ins. Co., supra*.

In Nebraska it is clear that if specific acts of negligence are alleged or there is direct evidence of the precise cause of the accident, the doctrine of res ipsa loquitur is not applicable. See, *Lund v. Mangelson*, 183 Neb. 99, 158 N.W.2d 223 (1968); *Nekuda v. Allis-Chalmers Manuf. Co.*, 175 Neb. 396, 121 N.W.2d 819 (1963); *Security Ins. Co., supra; Miratsky v. Beseda*, 139 Neb. 229, 297 N.W. 94 (1941); *Knies v. Lang*, 116 Neb. 387, 217 N.W. 615 (1928). The doctrine is applicable only where the plaintiff is unable to allege or prove the particular act of negligence which caused the injury. *Security Ins. Co., supra*.

In the present case no specific acts of negligence were alleged in the petition. Instead, the defendant complains that the specific act of negligence resulting in the injury, i.e., Mrs. Davis' leaving the vehicle in reverse gear, was clearly proved at

trial.

In *Knies v. Lang, supra,* this court indicated that res ipsa loquitur would not apply in a case where the evidence showed the "precise" cause of the accident. The court in *Knies* also made reference to the discussion of the doctrine in *McAnany v. Shipley,* 189 Mo. App. 396, 176 S.W. 1079 (1915). In that case the court reasoned that while the doctrine is unavailable where the *precise* cause is shown, the plaintiff does not lose the benefit of the doctrine by introducing evidence of specific acts of negligence, where the evidence leaves the cause of the accident in doubt or does not clearly show the cause. *McAnany v. Shipley, supra.*

Also, in *Security Ins. Co. v. Omaha Coca-Cola Bottling Co., supra* at 928, 62 N.W.2d at 131, we stated:

"[A]n unsuccessful attempt on the part of plaintiff to show the specific negligent act which caused his injury does not weaken or displace the presumption of negligence on the part of the defendant arising from the facts of the case by virtue of the rule of res ipsa loquitur."

Quoting 65 C.J.S. *Negligence* § 220(6) (1950).

Finally, in *Nuclear Corporation of America v. Lang,* 480 F.2d 990, 992 (8th Cir. 1973), the U.S. Court of Appeals for the Eighth Circuit, while interpreting the doctrine as applied in Nebraska law, indicated:

[I]t is quite generally agreed that the introduction of some evidence which tends to show specific acts of negligence on the part of the defendant, but which does not purport to furnish full and complete explanation of the occurrence does not destroy the inferences which are consistent with the evidence, and so does not deprive the plaintiff of the benefit of res ipsa loquitur. W. Prosser, Law of Torts 236 (3d ed. 1964).

The plaintiff's evidence of which the defendant complains consists of expert testimony by an experienced automobile mechanic that he had never heard of the type of transmission on the Bonneville's jumping into reverse; the plaintiff's testimony that after the accident Mrs. Davis told the plaintiff that she (Mrs. Davis) must have hit the gearshift lever with her purse as she left the car; Mr. Davis' deposition statements that the

vehicle had never jumped out of gear either before or since the time of the accident; and the plaintiff's testimony that Mrs. Davis was the only person she saw in the area when the plaintiff first discovered the runaway car.

The defendant makes no reference to the fact that the plaintiff introduced evidence that Mrs. Davis told an investigator at the scene that she had left the vehicle running and in park and that later, in a deposition, Mrs. Davis stated that she did not believe she had left the car in reverse or that she had struck the shift lever with her purse.

Considering the plaintiff's evidence, it can hardly be said that the cause of the accident was clearly shown. Mrs. Davis' statement that she must have hit the shift lever with her purse was thrown into doubt by her later statement that she did not think she had struck the shift lever or had left the vehicle in reverse. The evidence also fails to show that anyone actually witnessed what caused the vehicle to begin to move in reverse.

In considering a motion for a directed verdict, the trial court must resolve all controverted facts in favor of the nonmoving party and must give that party the benefit of any reasonable inference that can be drawn from the evidence. *Weiss v. Autumn Hills Inv. Co.*, 223 Neb. 885, 395 N.W.2d 481 (1986). The case may not be decided as a matter of law if there is any evidence which will sustain a finding for the nonmoving party. *Weiss v. Autumn Hills Inv. Co., supra.*

The evidence in the instant case, when viewed most favorably to the plaintiff, did not fully or completely establish the cause of the accident. Instead, it tended to show that no one really knew what caused the vehicle to begin to propel itself backward.

The fact that the plaintiff introduced evidence tending to show that Mrs. Davis had the best opportunity to place the gearshift in reverse did not fully explain what happened. In fact, in order for the doctrine to apply, the plaintiff was required to prove facts that were more consistent with negligence on the part of the defendants than with a mere accident or third-party intervention. See, *Knies v. Lang*, 116 Neb. 387, 217 N.W. 615 (1928); *Buzzello v. Sramek*, 110 Neb. 262, 193 N.W. 743 (1923). See, also, Restatement (Second) of Torts § 328 D, comment *f* (1965); Prosser and Keeton on the

Law of Torts, *Negligence: Proof* § 39 (5th ed. 1984).

The trial court did not err in refusing to direct a verdict, nor did it abuse its discretion in refusing to grant a mistrial. See *Kenyon & Larsen v. Deyle*, 205 Neb. 209, 286 N.W.2d 759 (1980).

The defendant next contends that the trial court erred in refusing to give his requested instruction on the duty to mitigate damages. That instruction read: "A person has the duty to take such reasonable steps under the circumstances as will minimize for [sic] injuries and damages. Any damages resulting from a failure to take such reasonable steps cannot be recovered."

There was evidence that the plaintiff had been advised by one of her doctors to return to lighter work on March 3, 1982. The plaintiff had not worked at a full-time job for more than a year before the accident, due to the death of her husband. Sometime after the accident, she was offered employment as a kitchen helper but declined the offer because her injuries made it impossible to stand all day.

The defendant cites no Nebraska authority, and we have found none, in which a duty to mitigate damages has been applied to a claim for lost wages on grounds that the plaintiff could have returned to some type of work. Cases from other jurisdictions have recognized such a duty in this context. *Kubista v. Romaine*, 87 Wash. 2d 62, 549 P.2d 491 (1976); *Bell v. Shopwell, Inc.*, 119 A.D.2d 715, 501 N.Y.S.2d 129 (1986).

The duty to mitigate damages arises out of the rule of avoidable consequences. C. McCormick, Handbook on the Law of Damages § 33 (West 1935). See, also, *Tetherow v. Wolfe*, 223 Neb. 631, 392 N.W.2d 374 (1986). The rule evolves from the general principle:

> Legal rules and doctrines are designed not only to prevent and repair individual loss and injustice, but to protect and conserve the economic welfare and prosperity of the whole community. Consequently, it is important that the rules for awarding damages should be such as to discourage even persons against whom wrongs have been committed from passively suffering economic loss which could be averted by reasonable efforts, or from actively increasing such loss where prudence would require that

such activity cease. The machinery by which the law seeks to encourage the avoidance of loss is by denying to the wronged party a recovery for such losses as he could reasonably have avoided, and by allowing him to recover any loss, injury, or expense incurred in reasonable efforts to minimize his injury.

C. McCormick, *supra* at 127.

Some authorities, however, consider the rule and the duty to mitigate damages arising out of it "as but an application of the principle which denies liability for injurious consequences which are not proximately caused by the defendant's wrongdoing." C. McCormick, *supra* at 128. A criticism of this characterization has been that stated in terms of proximate causation, the jury is likely to become confused, i.e., it may tend to award damages for injuries which the plaintiff could have avoided, because it is instructed to compensate for all injuries which in natural and continuous sequence, unbroken by an efficient intervening cause, flowed from the defendant's acts. J. Stein, Damages and Recovery: Personal Injury and Death Actions § 126 (1972).

In the present case the trial court instructed the jury as follows:

If you find for the Plaintiff on the issue of liability, you must fix the amount of money which will fairly and reasonably compensate her for any of the following elements of damage proven by a preponderance of the evidence to have proximately resulted from the negligence of the Defendant:

. . . .

4. The value of wages or salaries lost due to her inability or her diminished ability to work

(a) to date

(b) reasonably certain or reasonably probable to be experienced in the future.

In our view the policy considerations encompassed in the doctrine of avoidable consequences were adequately protected by the instruction given. Because the instruction limited recovery for lost wages to those proximately caused by Davis' negligence *and* due to Beatty's inability or diminished ability to

work, the jury was not permitted to award any amounts which may have arisen from an unreasonable refusal to return to work. Thus, the instruction was adequate to fairly submit the case and could not have misled the jury. See *Maloney v. Kaminski*, 220 Neb. 55, 368 N.W.2d 447 (1985). There was no prejudice in refusing to instruct the jury on the duty to mitigate damages.

Davis contends the trial court erred in submitting instruction No. 9 because it failed to advise the jury how to weigh the extent of risk which a volunteer may assume as compared to the danger to be met.

Instruction No. 9 provides: "It is not contributory negligence for the Plaintiff to expose herself to danger in an effort to save herself or others from injury to their person or property, unless the effort itself is an unreasonable one or the Plaintiff acts unreasonably in the course of it." As Davis acknowledges, a substantially similar instruction was given in *Lave v. Neumann*, 211 Neb. 97, 317 N.W.2d 779 (1982). The issue in that case involved the standard of care owed by the defendant to the plaintiff police officer. The court ultimately determined that the rescue doctrine embodied the appropriate standard and that the trial court had not erred in refusing to submit an instruction on the "fireman's rule" to the jury.

The court in *Lave, supra* at 101, 317 N.W.2d at 782, also elaborated on the meaning of the rescue doctrine:

> Under the rescue doctrine it is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person or the property of a third person from harm. The extent of the risk which the volunteer is justified in assuming under the circumstances increases in proportion to the imminence of the danger and the value to be realized from meeting the danger and attempting to remove or eliminate the hazard; that is, the less the danger to the third party, the less the risk the volunteer is justified in taking. *Buchanan v. Prickett & Son, Inc., supra.*

Davis complains that absent the language of the second sentence in the above quote, the jury was without guidance as to how to weigh the magnitude of the danger in relation to the

reasonableness of the attempted rescue. Further, he contends that with the benefit of this more precise instruction, the jury could have found that the plaintiff was only justified in taking minor risks to stop the vehicle.

At the trial, the defendant requested that the court submit to the jury his proposed instruction No. 7. That instruction in essence provided that a rescuer is not contributorily negligent unless her conduct involving a risk of harm is reckless. The instruction then defined reckless conduct as an act or acts which a reasonably prudent person would not commit under the circumstances existing at the time of the rescue. This instruction was very similar to that given by the trial court, and went no further than the instruction given by the trial court in providing the jury with guidance for determining the reasonableness of the attempted rescue. Counsel has the duty of tendering a more specific instruction where one is desired. *Erickson v. Monarch Indus.,* 216 Neb. 875, 347 N.W.2d 99 (1984).

Furthermore, the instruction which was given set forth the rescue doctrine essentially as defined in the Restatement (Second) of Torts § 472 (1965) was sufficient to fairly and fully instruct the jury on the law of the case, and could not have misled a jury. See *Maloney v. Kaminski, supra.* In previous cases, this court has recognized that reasonableness, as a standard applied in other contexts, provides adequate guidance to persons of ordinary intelligence when applied to specific circumstances. See *Fulmer v. Jensen,* 221 Neb. 582, 379 N.W.2d 736 (1986). There was no error in submitting instruction No. 9 to the jury.

The defendant's assignments of error regarding the trial court's alleged failure to instruct on the duty of a volunteer and regarding the sufficiency of the evidence to support the verdict were not briefed. Consideration of a case on appeal to this court is limited to errors assigned and discussed. Neb. Ct. R. of Prac. 9D(1)d (rev. 1986). See, also, *In re Interest of J.S., S.C., and L.S., ante* p. 234, 397 N.W.2d 621 (1986). Nevertheless, our review of the record shows there was sufficient evidence for the jury to find for the plaintiff. The verdict was not clearly wrong. See *Vacek v. Ames,* 221 Neb. 333, 377 N.W.2d 86 (1985).

There being no error, the judgment is affirmed.

AFFIRMED.