RODNEY MACHOLAN, APPELLANT, V. STEVE WYNEGAR, APPELLEE.

513 N.W.2d 309

Filed March 18, 1994.   No. S-91-1155.

George H. Moyer, Jr., of Moyer, Moyer, Egley, Fullner & Warnemunde, for appellant.

Ray C. Simmons, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

PER CURIAM.

The plaintiff appealed to the Nebraska Court of Appeals, which on July 23, 1993, affirmed by memorandum opinion the judgment of the district court. Because the Court of Appeals Nebraska. The defendant admitted negligence, but denied that the plaintiff's personal injuries were proximately caused by the accident. Following a jury trial, a verdict was returned in favor of the defendant.

The plaintiff appealed to the Nebraska Court of Appeals, which on July 23, 1993, by affirmed memorandum opinion the judgment of the district court. Because the Court of Appeals did not review several trial exhibits which had inadvertently remained in the possession of the defendant's attorney, although the exhibits had been prepared as part of the bill of exceptions on appeal, this court granted the plaintiff's petition

for further review.

On March 21, 1987, the plaintiff was traveling west on Highway 92 east of David City. When the plaintiff reached a point approximately 2¹/₂ miles east of David City, he came upon a number of vehicles parked along the highway on both sides because a consignment sale was taking place nearby. At that point, a pickup truck driven by the defendant emerged from the south ditch alongside the highway and struck the plaintiff's pickup truck, causing it to collide with a third vehicle parked on the north shoulder of the highway.

The plaintiff testified that he felt no pain at the time of the accident, but that he felt dizzy shortly after the accident. Following the accident, the plaintiff drove his truck to David City, where his son picked him up. When the plaintiff experienced dizziness and blurred vision while traveling home, he instructed his son to take him to the Schuyler hospital.

At the hospital, Dr. Howard Fencl, one of the plaintiff's family physicians, examined the plaintiff and found no bruises or other external injuries. Following the examination, the plaintiff was released to go home that same evening.

The plaintiff testified that he suffered back and neck pain, dizziness, headaches, and blurred vision. These maladies prevented him from engaging in his occupation as a truckdriver for 10 months following the accident. According to the plaintiff, his condition gradually improved between the date of the accident and the date of trial, but he still suffered from headaches and a stiff neck.

The plaintiff was seen by Dr. Joel Cotton, a neurologist, on May 19, 1987. He had been referred to Dr. Cotton by Dr. Gerald W. Luckey for blurred vision, dizziness, and tinnitus. According to Dr. Cotton, the plaintiff's neurological examination was normal except for spontaneous hyper-ventilation, which the doctor attributed to stress.

Dr. Schuyler Gooding saw the plaintiff in February 1988. He had the plaintiff x-rayed on February 12. From the x rays and his examination, Dr. Gooding was unable to identify any neck injury, but he did determine that the plaintiff had a disk abnormality that was most likely present prior to the accident. Based on his examination of the plaintiff and the plaintiff's

subjective complaints, Dr. Gooding testified that the plaintiff suffered an injury to his lower back from the accident of March 21, 1987.

Although the plaintiff made several visits to his family doctors' office after the accident for allergy treatments, he did not complain about his neck or back to them until June 16, 1988.

On June 16, the plaintiff complained to Dr. Merlin Sucha, Dr. Fencl's partner, that his neck and back were hurting him. Dr. Sucha testified that based upon the plaintiff's history and the doctor's examination of the plaintiff, it was Dr. Sucha's opinion that the plaintiff suffered a myofacial cervical strain in the accident of March 21, 1987.

On July 26, 1988, the plaintiff saw Dr. Fencl, complaining of pain in the right side of his neck. Dr. Fencl did not know what to do for the plaintiff and was concerned that the plaintiff was beginning to have a fixation problem with his neck pain. Dr. Fencl testified that because the plaintiff told him he had pain and had been in a motor vehicle accident, he assumed that the accident caused the plaintiff's pain.

The plaintiff was seen by Dr. Richard Cimpl, an orthopedist, on September 21, 1990. Following his examination of the plaintiff, Dr. Cimpl could find no symptoms on the cervical spine and no evidence of muscle spasm or tightness in the upper or lower back. According to the x rays he took, the plaintiff had some degenerative changes in his lower back. Based on the plaintiff's subjective complaints, Dr. Cimpl thought the accident had caused some injury to the plaintiff's neck and back.

On cross-examination, the plaintiff admitted that he had been treated by a chiropractor for back pain on several occasions prior to the accident.

The plaintiff's errors as assigned and argued in his briefs before the Court of Appeals can be summarized as follows: (1) The trial court erred by failing to grant the plaintiff's motion for directed verdict; (2) the jury verdict was not supported by the evidence and was so clearly wrong as to induce a belief that it must have been rendered under the influence of passion, prejudice, or mistake; (3) the trial court erred by submitting two

forms of verdict to the jury; (4) the trial court erred by giving a grammatically incorrect instruction; (5) the trial court erred by failing to give NJI2d Civ. 1.02; and (6) the trial court erred by failing to sustain the plaintiff's motion for new trial.

The plaintiff argues that the trial court erred by not directing a verdict in his favor because his expert witnesses concluded that his injuries were caused by the accident of March 21, 1987.

In order to sustain a motion for directed verdict, the trial court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. In considering the evidence for the purpose of a motion for directed verdict, the party against whom the motion is made is entitled to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence in favor of the party against whom the motion is made, the case may not be decided as a matter of law. *Baker v. St. Paul Fire & Marine Ins. Co.*, 240 Neb. 14, 480 N.W.2d 192 (1992).

Although the plaintiff's experts testified that he sustained an injury to his lower back from the March 21, 1987, accident, the record contains evidence that suggests that the plaintiff had preexisting injuries similar to those he claimed to have sustained in the accident. The earliest the plaintiff was seen by any of the plaintiff's physicians who testified, excluding the emergency room visit the evening of the accident, was nearly a year after the accident occurred. Furthermore, the neurologist that the plaintiff saw only 2 months following the accident concluded that the plaintiff's injuries were stress related. Because this evidence favored the defendant, the trial court's denial of the plaintiff's motion for directed verdict was not erroneous.

The plaintiff claims that the jury's verdict is unsupported by the evidence and was rendered under the influence of passion, prejudice, mistake, or something not apparent in the record. The plaintiff attempts to support his claim that the verdict was unsupported by the evidence by reasserting that the expert testimony regarding the cause of his injuries was uncontroverted.

The issue of the proximate cause of the plaintiff's injury was

for the jury to determine.

> A jury is not required to accept as absolute verity every statement of a witness not contradicted by direct evidence. Satterfield v. Watland, 180 Neb. 386, 143 N. W. 2d 124. The persuasiveness of evidence may be destroyed even though not contradicted by direct evidence. Meadows v. Skinner Manuf. Co., 178 Neb. 856, 136 N. W. 2d 184. It is fundamental in our adversary system that a jury alone is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony.

(Emphasis omitted.) *Batterman v. Richardson*, 189 Neb. 303, 309, 202 N.W.2d 613, 616 (1972).

This case is very similar to the *Batterman* case. In that case, the plaintiff sued the defendant for damages as a result of an automobile collision. The jury was instructed that the defendant was negligent as a matter of law, and the only issues submitted to the jury were whether the defendant's negligence proximately caused the plaintiff any injury and, if so, the amount of the damages.

The jury returned a verdict for the defendant, and the plaintiff appealed, claiming that the verdict was not supported by the evidence because both of her experts testified that she suffered an injury to her right knee due to the accident with the defendant.

The evidence showed that prior to the collision, the plaintiff had been treated for a degenerative problem with her right knee. The plaintiff did not see her doctor until 6 days after the accident, when she complained of pain in her neck and left knee. The first time the plaintiff complained of pain in her right knee was approximately 7 weeks following the accident. More than a year after the accident, the plaintiff was treated, and x rays showed a continuing and progressive condition in her right knee. The opinion testimony of the plaintiff's experts was based almost entirely upon the subjective oral complaints by the plaintiff.

In affirming the jury's verdict for the defendant, this court stated:

> [The jury] could have also found that the plaintiff made no complaint of injury to her right knee until 7 weeks after

the accident and her own doctor did not feel that even an X-ray of her knee was necessary until almost 3 years after the accident. More important, in the status of the expert testimony, it could have found that the plaintiff's difficulties were the result of conditions preceding and unrelated to the accident, from the previous injury and such general disease conditions as arthritis . . . . It could have further found that the plaintiff had no permanent disability except to her right knee and that this disability in the right knee was about the same at the time of the trial as it was prior to the accident. It could have further found in this respect that whatever aggravation she may have suffered subsequent to the time of the accident rested on subjective oral recitals it did not believe, and could neither be apportioned in any reasonable sense to the trauma of the accident itself or that it may have been a progressive condition from disease arising from general arthritis and other unrelated conditions.

It is quite apparent in the review of this case that the jury simply did not accept the evidence adduced to show that the plaintiff was indeed injured and entitled to damages. The jury is the sole judge of the credibility of the testimony and the weighing of the expert testimony. The evidence or lack of evidence in this case is ample to support the jury verdict and it must be permitted to stand.

*Batterman*, 189 Neb. at 311-12, 202 N.W.2d at 617-18.

In the present case, the opinions of the plaintiff's experts were based primarily on his subjective complaints of pain. With the exception of the plaintiff's visit to the emergency room on the evening of the accident, the four physicians who testified did not examine the plaintiff for his complaints until sometime later—almost a year following the accident for Dr. Gooding, 15 months following the accident for Drs. Sucha and Fencl, and nearly 3 1/2 years following the accident for Dr. Cimpl. In each instance, the plaintiff saw each doctor generally only once regarding his complaints. Moreover, the record contains evidence of a preexisting injury to the plaintiff's lower back and conflicting expert testimony on the cause of the plaintiff's injuries.

The evidence in this case supports the jury's verdict.

Next, the plaintiff contends that the trial court erred by submitting two forms of verdict to the jury. The plaintiff claims that the jury should have been given one verdict form on which the jury was required to find for the plaintiff with the only issue to be resolved by the jury being the issue of damages.

The effect of giving the jury one verdict form on which the jury must find for the plaintiff would be the same as awarding the plaintiff a directed verdict on the issue of proximate cause. As discussed, the plaintiff was not entitled to a directed verdict on the issue of proximate cause. Accordingly, the plaintiff's argument regarding the verdict forms is without merit.

The plaintiff asserts that the trial court erred in giving jury instruction No. 4, which stated:

> If your verdict is for the plaintiff and you find that the plaintiff, prior to March 21, 1987, had a bodily condition which was causing disability or pain, and that this pre-existing condition was aggravated by this collision, then, the plaintiff is entitled to recover only for the extent of the aggravation of the pre-existing condition proximately caused by the accident.
>
> However, if your verdict is for the plaintiff and you find that the plaintiff, prior to March 21, 1987, had a bodily condition which was not causing disability or pain, and that this pre-existing condition was activated or "lightened up" by this accident, then, the plaintiff is entitled to recover for the whole of such result proximately caused by the accident.

This instruction was taken from NJI 4.09 and 4.09A. The plaintiff's first complaint about this instruction is that the word "lightened" in the second paragraph is a misspelling of the word "lighted." The plaintiff claims this misspelling changes the meaning of the entire second paragraph.

A jury instruction is not prejudicially erroneous where its meaning is reasonably clear. An inadvertent grammatical error in an instruction is harmless error if it is clear from the instruction itself and the other instructions given that the jury was not confused or misled by the error. *Greenberg v. Bishop Clarkson Memorial Hospital*, 201 Neb. 215, 266 N.W.2d 902

(1978).

The misspelling involved in instruction No. 4 does not change the meaning of the second paragraph. Any potential confusion over the misspelled word is cleared up by the term "activated," which was used in the alternative to the misspelled word. The trial court's grammatical error was harmless.

The plaintiff also complains that instruction No. 4 was erroneous because of a change in the Nebraska Jury Instructions regarding preexisting injuries. The instruction given by the trial court was taken from the first edition of the Nebraska Jury Instructions. The second edition combines NJI 4.09 and 4.09A and also contains the following sentence: "If you cannot separate damages caused by the preexisting (condition) from those caused by the . . . accident . . . then the defendant is liable for all of those damages." NJI2d Civ. 4.09. The comments to NJI2d Civ. 4.09 state that this sentence is appropriate only where the plaintiff has established injury and causation and there remains only a question of apportioning the damages between the preexisting injury and the defendant's negligence.

In this case, there was an issue as to causation. The trial court did not err by refusing to give the jury the above damage-apportionment instruction.

The plaintiff argues that the trial court erred in failing to give NJI2d Civ. 1.02, which states in part: "The following things are not evidence: 1. Statements, arguments, and questions of the lawyers for the parties in this case."

The plaintiff claims that certain questions by the defendant's lawyer during cross-examination of the plaintiff and of his witnesses were improper and would confuse the jury as being evidence. The questions asked were typical leading inquiries asked by trial attorneys on cross-examination and were not objected to by the plaintiff.

The instruction given by the court did not directly address the issue of an attorney's statements, questions, or arguments not being evidence; however, the plaintiff has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of his. See *Petska v. Olson Gravel, Inc.*, 243 Neb. 568, 500 N.W.2d 828 (1993).

Counsel has the duty of tendering a more specific instruction when one is desired. *Beatty v. Davis*, 224 Neb. 663, 400 N.W.2d 850 (1987).

The plaintiff filed five "offered instructions," but did not include NJI 1.11 or NJI2d Civ. 1.02.

At the instruction conference, the plaintiff made an oral request that instruction No. 1 include the following sentence from NJI 1.11: "However, the argument or remarks of an attorney are not evidence, and if an attorney has made any statement of fact which is not supported by the evidence, you should disregard it."

In instruction No. 1, the trial court did include the following language which was taken from NJI2d Civ. 1.01:

> In determining what the facts are you must rely solely upon the evidence in this trial and the general knowledge that everyone has. You must disregard your personal knowledge of any other specific fact.
>
> . . . .
>
> . . . The attorneys have a duty to represent their clients. In arguing their clients' case, attorneys may draw legitimate deductions and inferences from the evidence.

Since the court did instruct the jury that the attorneys may draw legitimate deductions and inferences from the evidence, we believe it was error for the trial court to fail to instruct the jury as requested that the argument or remarks of an attorney are not evidence and that any statement of fact by an attorney which is not supported by the evidence should be disregarded. As a consequence, we reverse the judgment and remand the cause for a new trial.

Finally, the plaintiff claims that the trial court's denial of his motion for new trial was erroneous.

A motion for new trial should be granted only where there is error prejudicial to the rights of the unsuccessful party. Unless such error appears, a party who has sustained the burden and expense of trial, and who has succeeded in securing a verdict on the facts in issue, has a right to keep the benefit of that verdict. *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990).

The plaintiff offers no basis for this assignment of error

other than the alleged errors previously discussed. Because all of the plaintiff's assigned errors are without merit, except the addition requested to instruction No. 1, the trial court did not otherwise err in denying the plaintiff's motion for new trial.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

BOSLAUGH, J., dissenting.

I think that the instructions given by the trial court were adequate under the circumstances of this case and that the judgment should have been affirmed.

The jury was cautioned that "[i]n determining what the facts are you must rely solely upon the evidence in this trial and the general knowledge that everyone has." In effect, the plaintiff wants an additional statement to the jury that says the same thing that the trial court said.

Although the plaintiff argues that NJI2d Civ. 1.02 should have been given by the trial court, the fact is that it was not requested at the instruction conference or otherwise.

Completely ignored by the plaintiff is the requirement that he show how he was actually prejudiced in any way by the trial court's failure to give the added instruction requested orally at the instruction conference.

What was requested from NJI 1.11 refers to argument or remarks of an attorney, and there is no reference made by the plaintiff to any argument or remark of the defendant's counsel that was improper or not supported by the record. In fact, the argument was not reported, and the plaintiff made no objection to any argument or remark made by the defendant's counsel.

What the plaintiff was objecting to were questions asked by the defendant's counsel which were leading in some respects but asked upon cross-examination. There was an occasional objection made to a question, but in no case was the ruling of the trial court or the plaintiff's objection assigned as error.