TROY & STALDER CO., A NEBRASKA CORPORATION, ET AL., APPELLANTS, V. CONTINENTAL CASUALTY COMPANY, AN ILLINOIS CORPORATION, APPELLEE.

290 N. W. 2d 809

Filed April 8, 1980. No. 42701.

William B. Woodruff, P. C., for appellants.

Eugene P. Welch and Thomas A. Grennan of Gross, Welch, Vinardi, Kauffman, Day & Langdon, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

This action began as a declaratory judgment proceeding to require the defendant insurance company to assume the defense of certain malpractice actions against the plaintiff architects under a professional liability insurance policy. The malpractice actions were concluded before the declaratory judgment action was determined and the action proceeded on an amended petition seeking damages and attorney's fees for breach of contract. The District Court found that no coverage was afforded under the policy of in-

surance and dismissed the action.

On March 27, 1968, the defendant insurance company issued an architects' and/or engineers' professional liability insurance policy to plaintiffs insuring them against legal liability caused by error, omission, or negligent act. The insurance policy was renewed annually through March 27, 1976. The policy was canceled on July 16, 1976, for nonpayment of premium. The defendant provided continuous malpractice coverage for plaintiffs from March 27, 1968, through July 16, 1976. The insurance policy covered

errors, omissions or negligent acts which occur on or after the date stated in item 6 of the declarations (the effective date of the first policy issued and continuously renewed by the Company) provided that claim therefor is first made against the insured during this policy period and reported in writing to the Company during this policy period or within 60 days after the expiration of this policy period.

The policy required:

The insured shall, as soon as practicable after receiving notification of an actual or alleged error, omission or negligent act that might reasonably be expected to create a claim against him, give written notice thereof to the Company along with full and complete particulars of the actual or alleged error, omission or negligent act.

The insured shall, as soon as practicable after a claim has been made against him but in any event within 60 days after the expiration of this policy period, give written notice thereof to the Company along with full and complete particulars of the claim.

If suit is brought against the insured, the insured shall immediately forward to the Company every demand, complaint, notice,

summons, pleading or other process received by him or his representative.

All notices and other papers shall be sent to the Company at 310 South Michigan Avenue, Chicago, Illinois 60604.

On April 23, 1971, plaintiffs entered into an agreement with Wilson Certified Foods, Inc., for the construction of a new pork processing plant near Marshall, Missouri. Plaintiffs' work under that contract was completed in the fall of 1973. After completion of that project, plaintiffs claimed they were entitled to more architectural fees from Wilson than they had received, and continued to negotiate with Wilson in an attempt to obtain the balance due.

On March 3, 1976, plaintiffs mailed a letter addressed to "Mr. H. Norman Hunt Claims Manager Victor O. Schinnerer & Co., Inc. 5028 Wisconsin, Ave. Washington, D. C. 20016." The letter advised Mr. Hunt that plaintiffs intended to sue Wilson for approximately $90,000, and that Wilson would undoubtedly file a counterclaim. It also stated that, in plaintiffs' opinion, any legitimate counterclaims would be nebulous.

H. Norman Hunt was an agent of the defendant insurance company who was in charge of the Omaha, Nebraska, claims office of the defendant. Hunt had never lived or worked in Washington, D.C., and had never been an employee of Victor O. Schinnerer & Co., Inc. Victor O. Schinnerer & Co., Inc., was the producing agent for architects' and engineers' malpractice insurance policies written by the defendant and had no responsibility for handling claims or defense under such policies.

The evidence was that neither H. Norman Hunt nor anyone in his office, Continental Casualty Company, nor anyone in the Schinnerer office in Washington, D.C., ever received the March 3, 1976, letter.

On April 30, 1976, Wilson advised plaintiffs by letter of claims against the plaintiffs for errors and

omissions in the architectural work for the Missouri plant. Plaintiffs did not forward that letter to the defendant or any of its agents, or notify them of its receipt. The insurance policy was canceled by defendant, after notice, effective July 16, 1976, for non-payment of premium.

In the spring of 1977, plaintiffs were sued by Wilson for professional malpractice in the construction of the Missouri hog plant and copies of the summons and complaint were sent to Victor O. Schinnerer & Co., Inc., in Washington, D. C.

On April 6, 1977, plaintiffs sued Wilson in the United States District Court for Nebraska to recover architectural fees, and on June 6, 1977, Wilson filed a counterclaim against plaintiffs alleging malpractice. A copy of the counterclaim was sent to Victor O. Schinnerer & Co., Inc. Schinnerer advised the defendant of the claims and H. Norman Hunt, the claims manager of the defendant in Omaha, denied coverage on the basis that the claim was not reported to the company during the policy period or within 60 days after expiration.

On August 28, 1978, pursuant to a stipulation of the parties, judgment was entered in the United States District Court for Nebraska in favor of plaintiffs in the sum of $94,910.48, and Wilson was found to be entitled to a setoff against that judgment in the sum of $69,910.48 for damages caused by plaintiffs' professional errors and omissions.

Meanwhile, on June 10, 1977, plaintiffs filed this action for a declaratory judgment in the District Court for Douglas County, Nebraska, seeking to require the defendant to undertake the defense of the malpractice lawsuits.

In December 1978, following the entry of the stipulated judgments in the federal court, plaintiffs filed an amended petition in this action in the District Court for Douglas County, praying for judgment against the defendant for breach of contract in the

sum of $69,910.48, together with attorney's fees incurred in the defense of the malpractice actions.

The case was tried to the court without a jury. On February 15, 1979, the District Court entered judgment for the defendant. The District Court found that plaintiffs failed to report in writing to the defendant during the policy period the fact that a claim was made against the insured; that the letter of March 3, 1976, was incorrectly addressed and not entitled to the presumption of delivery; and also that the letter was not delivered to the defendant. The District Court therefore found that plaintiffs had no coverage under the policy of insurance and dismissed plaintiffs' action. The plaintiffs have appealed.

The plaintiffs contend that the letter of March 3, 1976, was properly addressed, stamped, and mailed and is therefore entitled to the presumption that it was received by the addressee in the usual course of the mails. Essentially, plaintiffs' position is that the presumption is irrebuttable and that testimony or evidence that the letter was not received is insufficient to overcome the presumption and is also insufficient to support a finding by the fact finder that the letter was not received.

The addressee of the letter of March 3, 1976, was H. Norman Hunt. Hunt was the claims manager of the defendant in Omaha, Nebraska. The evidence was undisputed that Hunt's correct address was Omaha, Nebraska, and that he was not and never had been a resident of Washington, D.C.

We have recently held that the presumption of receipt of mail by the addressee does not arise unless it is shown that the letter was properly addressed, stamped, and mailed. *Waite Lumber Co., Inc. v. Carpenter*, 205 Neb. 860, 290 N.W.2d 655 (1980). That case also points out that even if the presumption of receipt of mail arises, it may be rebutted by any relevant evidence and positive testimony that a

letter was not received simply raises a question of fact to be decided by the trier of fact. Even where the evidence of proper addressing and mailing is sufficient to raise the presumption of receipt and shift the burden of proof on the issue to the opposing party, the presumption is still rebuttable and the factual issue of whether mail was received is for determination by a jury under proper instructions where the evidence is in conflict.

In the case now before us, the trier of fact not only determined that the letter of March 3, 1976, was not properly addressed to the defendant nor any of its authorized agents and was not entitled to the presumption of delivery, but the court also found on the evidence that the letter of March 3, 1976, was not delivered to the defendant. The court also found that the letter did not constitute sufficient notice of a claim. There was evidence to support those factual findings.

In a law action tried to the court without a jury, it is not within the province of this court to weigh or resolve conflicts in the evidence. The credibility of the witnesses and the weight to be given to their testimony are for the trier of fact. The judgment of a trial court in an action at law tried to the court without a jury has the effect of a verdict of a jury and should not be set aside on appeal unless clearly wrong. *Insurance Co. of North America v. Hawkins*, 197 Neb. 126, 246 N.W.2d 878 (1976).

The judgment of the trial court is affirmed.

AFFIRMED.

CLINTON, J., not voting.