## VICTORIA L. BAKER, APPELLEE, v. ST. PAUL FIRE & MARINE INSURANCE COMPANY, APPELLANT.

480 N.W.2d 192

Filed February 21, 1992.    No. S-89-835.

William H. Selde, of Sodoro, Daly & Sodoro, for appellant.

Barbara Thielen, of Taylor, Fabian, Thielen & Thielen, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

St. Paul Fire & Marine Insurance Company (St. Paul) appeals a Douglas County jury verdict awarding Victoria L. Baker $24,850 under a homeowner's insurance policy issued by St. Paul. The insurer claims that the policy had lapsed before fire damaged Baker's home, because Baker failed to pay the final installment on the policy premium.

As a matter of law and based on facts upon which reasonable minds can reach only one conclusion, Baker's homeowner's policy had lapsed before the fire damaged her home. We, therefore, reverse the jury award and direct that Baker's case be dismissed.

In November 1984, Victoria L. Kardell (now Victoria L. Baker) purchased a homeowner's insurance policy on her residence in Omaha, for the period of November 15, 1984, to November 15, 1985. The premium for the policy was to be paid in four equal installments. The first three premium installments were timely paid by Baker.

The record reflects that the fourth installment was due July 28, 1985. Baker testified that she mailed her check in the amount of $128.25 to St. Paul on July 15, 1985. She said she

would typically mail her quarterly payment and the installment statement to St. Paul in the insurer's preaddressed envelope which accompanied the premium statement. Baker testified that she placed a stamp on the envelope containing her check and a portion of the statement and dropped the envelope into a mail chute in the hallway of the Livestock Exchange Building, where she worked. She stated that the mail chutes "run down to the basement where the mailroom is."

On September 26, 1985, Baker's residence was extensively damaged by fire. When Baker's mother contacted the office of Baker's insurance agent, she was told that there was no coverage for the fire. Baker was subsequently informed that there was no coverage because the policy had lapsed due to nonpayment of premium.

Thereafter, Baker filed this lawsuit in the district court for Douglas County, alleging she had not received notice from St. Paul that the insurer had not received the premium installment, nor had she received notice of St. Paul's intention to cancel her homeowner's policy. St. Paul filed a motion for summary judgment, which was denied, and the case proceeded to trial. After Baker adduced evidence and rested her case, each of the parties moved for a directed verdict. Both motions were overruled.

Because St. Paul produced evidence following the court's overruling of its motion for directed verdict at the close of Baker's case in chief, any error in regard to that ruling was waived. A defendant who moves for a directed verdict at the close of evidence in the plaintiff's case in chief and who, when the court overrules the directed verdict motion, proceeds with trial and introduces evidence waives the appellate right to challenge correctness in the trial court's overruling the motion for directed verdict. *Sikyta v. Arrow Stage Lines*, 238 Neb. 289, 470 N.W.2d 724 (1991).

After both parties rested, Baker and St. Paul renewed their respective motions for directed verdict. Both renewed motions were overruled. The jury found for Baker in the amount of $24,850, which represented $25,000 damage less $150 deductible under the policy. St. Paul's motion for judgment notwithstanding the verdict and its motion for a new trial were

overruled.

On appeal, St. Paul complains that the trial court erred by (1) overruling its motions for (a) summary judgment, (b) directed verdict, (c) judgment notwithstanding the jury's verdict, and (d) new trial and (2) awarding Baker an attorney fee.

Because we find that the trial court erred in failing to sustain St. Paul's motion for a directed verdict at the close of all the evidence, it is necessary to discuss only that assignment of error and the award of attorney fees to Baker.

> In order to sustain a motion for directed verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. . . . In considering the evidence for the purpose of a motion for directed verdict, the party against whom a motion is made is entitled to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence in favor of the party against whom the motion is made, the case may not be decided as a matter of law. . . .
>
> On a motion for directed verdict . . . " 'the moving party is deemed to have admitted as true all the material and relevant evidence admitted which is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences which can reasonably be deduced therefrom.' "

*McCune v. Neitzel*, 235 Neb. 754, 762, 457 N.W.2d 803, 809 (1990).

The key to resolving the issues in this case centers on the answers to two controlling questions: (1) whether Baker adduced sufficient evidence to prove that she made the final premium installment payment on her homeowner's policy and (2) whether Baker's homeowner's policy lapsed when she failed to make the final installment payment of premium.

There is no direct evidence in the record that St. Paul received the final installment of premium payment from Baker. To create a question of fact for the jury, Baker necessarily had to rely upon the presumption of receipt of mail by an addressee to prove that St. Paul received the final premium installment

payment on her homeowner's policy. As a matter of law, Baker's evidence did not entitle her to the receipt-of-mail presumption, nor was the evidence sufficient to submit the issue of payment to the jury.

This court has held that the presumption of receipt of mail by the addressee does not arise unless it is shown that the letter was *properly* addressed, stamped, and mailed. *Troy & Stalder Co. v. Continental Casualty Co.*, 206 Neb. 28, 290 N.W.2d 809 (1980).

In this case, the receipt-of-mail presumption in Baker's favor against St. Paul did not arise, because Baker failed to show that her claimed mailing containing her alleged installment of the premium payment was properly mailed. Baker testified that she placed the envelope containing the premium payment in a mail chute which led to a mailroom in the Livestock Exchange Building. There is no evidence that the mailroom was operated under the auspices of the U.S. Postal Service or that it was a U.S. Postal Service depository. Neither was there any evidence adduced showing that an authorized individual invariably collected and placed all outgoing mail collected from the mailroom in a regular U.S. mail depository or that such a procedure was actually followed on July 15, 1985. Baker failed to prove all the elements necessary to show that there had been a proper mailing of the premium payment, as required by *Troy & Stalder Co., supra,* and by *Houska v. City of Wahoo*, 235 Neb. 635, 641, 456 N.W.2d 750, 754 (1990), which holds:

> [A]bsent direct proof of actual deposit with an authorized U.S. Postal Service official or in an authorized depository . . . proof of a course of individual or office practice that letters which are properly addressed and stamped are placed in a certain receptacle from which an authorized individual invariably collects and places all outgoing mail in a regular U.S. mail depository and that such procedure was actually followed on the date of the alleged mailing creates an inference that a letter properly addressed with sufficient postage attached and deposited in such receptacle was regularly transmitted and presents a question for the trier of fact to decide.

Absent the presumption of receipt of mail by St. Paul, there

is no relevant evidence in the record that even tends to prove St. Paul ever received Baker's alleged final premium installment payment on her homeowner's policy. Neither Baker's testimony nor her records indicate that the check she allegedly sent to St. Paul for the fourth premium installment on her homeowner's policy was ever received or cashed by St. Paul. As a matter of fact, a search of the records at Baker's bank reflects that the alleged check was never presented to Baker's bank or charged against Baker's account. There being no presumption in favor of Baker that St. Paul received mail containing Baker's final premium installment and there being no other relevant evidence that St. Paul ever received Baker's final installment of premium payment, reasonable minds can come to only one conclusion. That conclusion is that Baker failed to meet her obligation under the policy to pay St. Paul the final installment of premium payment.

Since Baker failed to show that she made the installment of premium payment, we now consider St. Paul's contention that Baker's homeowner's policy lapsed before the fire at Baker's home.

The continuance of the insurer's obligation is conditional upon the payment of premiums, so that no recovery can be had upon a lapsed policy, the contractual relation between the parties having ceased. *St. Paul Mercury Ins. Co. v. Hurst,* 207 Neb. 840, 301 N.W.2d 352 (1981). The burden is on an insured to keep a policy in force by the payment of premiums, rather than on the insurer to exert every effort to prevent the insured from allowing a policy to lapse through a failure to make premium payments. *Id.*

The burden of establishing an effective cancellation before a loss is on the insurer, and notice of cancellation must be in accord, and in substantial compliance, with the provisions of the policy relating thereto, and peremptorily explicit and unconditional. *Jelsma v. Scottsdale Ins. Co.,* 231 Neb. 657, 437 N.W.2d 778 (1989). By the terms of the policy, St. Paul needed only to mail a notice of cancellation, which would become effective 20 days after it was mailed. The relevant statute required only that a policy contain an appropriate provision for cancellation. See Neb. Rev. Stat. § 44-379 (Reissue 1984). The

parties to an insurance contract may contract for any lawful coverage, and the insurer may limit its liability and impose restrictions and conditions upon its obligation under the contract not inconsistent with public policy or statute. *Allstate Ins. Co. v. Farmers Mut. Ins. Co.*, 233 Neb. 248, 444 N.W.2d 676 (1989). As a general rule, the proper construction of a written contract is a question of law. *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992).

The cancellation clause contained in Baker's policy (in reality, a lapse clause) provided that "[i]f you fail to pay your premium when it's due, we'll mail cancellation notice to you that's effective 20 days from the date we mailed it." St. Paul adduced uncontroverted evidence that it mailed a provisional notice of cancellation to Baker on August 9, 1985. That provisional notice warned Baker that the final premium payment due July 28, 1985, had not been paid and that if it was not paid by September 1, 1985, her policy would be cancelled effective on that date. (In reality, the policy would lapse and Baker would have no insurance.) Reasonable minds can come to only one conclusion: The provisional notice was properly addressed to Victoria L. Kardell (Baker) at her then current address and properly deposited in the U.S. mail. A copy of the provisional notice bearing a U.S. postmark of August 9, 1985, and receipt of that provisional notice for mailing by U.S. postal authorities was received in evidence. Baker did not deny receiving the provisional notice, but testified that she did not remember whether she received the notice. She testified that her local insurance agent and First Federal of Lincoln, which held the mortgage on her home, each received a copy of the provisional notice.

By properly mailing the provisional notice of cancellation of Baker's homeowner's policy, warning her that her policy would lapse if the final premium installment was not paid, which mailing was proved to be in compliance with the rules set forth in *Troy & Stalder Co. v. Continental Casualty Co.*, 206 Neb. 28, 290 N.W.2d 809 (1980), St. Paul became entitled to the presumption that Baker received notice of cancellation of her policy if she did not timely make the final installment premium payment. The mailing was in accord with the terms of Baker's

policy.

Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992). In our independent judgment, as a matter of law, there was insufficient evidence to submit Baker's case to the jury and the contractual relationship between Baker and St. Paul ceased on September 1, 1985, leaving Baker with no coverage for the fire damage to her home on September 26, 1985. Thus, the trial court erred in overruling St. Paul's motion for a directed verdict at the close of all the evidence.

Because we are reversing the judgment entered in favor of Baker and ordering the district court to dismiss her petition, she is not entitled to attorney fees, and the district court's award of those fees is also vacated. Baker's application for attorney fees in this court is also denied, as she has not recovered under her St. Paul homeowner's policy.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.