MARY L. BROWN, APPELLEE AND CROSS-APPELLANT, V. TODD C. HANSEN AND CHARLES HANSEN, APPELLANTS AND CROSS-APPELLEES.

510 N.W.2d 473

Filed July 6, 1993. No. A-91-1233.

Michael A. England and Stephen L. Ahl, of Wolfe, Anderson, Hurd, Luers & Ahl, for appellants.

Patrick W. Healey, of Healey Wieland Law Firm, for appellee.

SIEVERS, Chief Judge, and IRWIN and WRIGHT, Judges.

IRWIN, Judge.

This appeal challenges the propriety of the district court's sustaining of a motion for new trial. The action, arising out of an automobile accident, was tried to a jury and resulted in a verdict in favor of the defendants-appellants, Todd C. Hansen and Charles Hansen. Plaintiff-appellee, Mary L. Brown, filed a motion for judgment notwithstanding the verdict or for a new trial. The district court sustained her motion for a new trial.

Appellants claim that the district court erred in sustaining Brown's motion for new trial and in overruling appellants' motion to reopen motion for judgment notwithstanding the verdict or for a new trial for the submission of additional evidence.

Brown, in her cross-appeal, asserts that the district court erred in overruling her motion for directed verdict on liability made at the conclusion of the evidence and her motion for judgment notwithstanding the verdict.

## STANDARD OF REVIEW

The standard of review of an order granting a new trial is whether the trial court abused its discretion. *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990); *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989). A motion for new trial should be granted only where there is error prejudicial to the rights of the unsuccessful party. *Id.* Unless such error appears, a party who has sustained the

burden and expense of trial, and who has succeeded in securing a verdict on the facts in issue, has a right to keep the benefit of that verdict. *Id.*

## FACTS

As stated above, this appeal arises out of an automobile accident that occurred on Sunday, February 25, 1990, at approximately 9:45 a.m. On that date, Mary L. Brown was a passenger in a 1990 Dodge Caravan which was being driven by her husband in the northbound lane of Salt Valley Roadway in Lincoln, Nebraska. Salt Valley Roadway in the area of the accident is a relatively new, essentially flat north-south two-lane hard-surfaced concrete road with wide hard-surfaced shoulders and grass shoulders beyond. The weather was cold, but the roadways were clear. As the van proceeded north, appellants' southbound 1977 Pontiac Trans Am came across the centerline into the northbound lane. The van's driver veered to the right to avoid being hit by the Trans Am, but the Trans Am collided with the driver's side of the van. After that collision, the Trans Am swerved to the west side of the road and then back into the northbound lane and struck a Honda automobile nearly head on.

Shortly after the accident, defendant Todd C. Hansen (Hansen), age 17 years at the time and a student at Milford High School, was interviewed by an investigating police officer. Hansen stated that he must have fallen asleep or blacked out prior to the collision. The officer found no indication that Hansen was under the influence of any drugs or alcohol.

Hansen had gone to bed between 10:30 and midnight the night before. He awoke at 8:30 a.m., and after he showered and ate breakfast, he left for church, which was located at Highway 2 and Old Cheney Road in Lincoln. Hansen remembered leaving home in Milford and the drive to Lincoln to the intersection of Salt Valley Roadway and West Van Dorn. He remembered seeing a 55-m.p.h. speed limit sign a short distance south of the intersection. That sign marked a change in the speed limit from 45 m.p.h. to 55 m.p.h., and he accelerated after he passed the sign. Hansen remembered striking something (he did not remember hitting the van), sliding into

the oncoming traffic lane, and colliding with the Honda.

Hansen's parents stated that their son was adopted and that they had not been provided with any family medical history regarding his birth parents. They said that Hansen had experienced some unusual sleep-related incidents when he was younger. More recently, Hansen had exhibited a condition known as sleep drunkenness, which means that it sometimes took 35 to 45 minutes for him to completely wake up in the morning. Hansen claims that since the accident, he has experienced other symptoms of a sleep disorder. On one occasion after the accident, Hansen got up in the morning, took a shower, got dressed, and then went back to bed. Since the accident, he has fallen asleep on several occasions when riding in the car with his parents.

Hansen was examined on November 1, 1990, by Dr. Robert E. Steg, a neurologist who specializes in clinical neurophysiology and sleep disorders medicine. Dr. Steg took Hansen's medical history, which included a history of hypersomnolence in his early childhood. Dr. Steg performed a physical examination and ordered a special type of examination known as a multiple sleep latency test. From the latter test, Dr. Steg concluded that Hansen had idiopathic central nervous system hypersomnolence, which is a pathologic degree of daytime sleepiness, in which a person is difficult to arouse in the morning, and after awakening, the person may experience "sub-wakefulness which is a half-awake, half-asleep condition where they may do some automatic behavior which may or may not be correct." "Idiopathic" means a condition with an unknown cause, "hyper" means more than usual, and "somnolence" is a term for sleepiness. It is common for a person with this condition to fall asleep instantly, and without warning, at inappropriate times. These episodes are called sleep attacks.

On August 13, 1990, defendants had served answers to Brown's interrogatories, which included:

> [Interrogatory No. 17:] Identify each person defendant or defendant's attorney may call as an expert witness at the trial in this proceeding, and with respect to each such expert witness state separately.

a. The subject matter on which the expert is expected to testify.

b. The substance of the facts and opinions to which the expert is expected to testify.

c. A summary of the grounds for each opinion.

ANSWER: Experts have not yet been selected, and at the time they are this answer will be supplemented.

In defendants' pretrial conference memorandum of October 25, 1990, Dr. Steg had been listed as one of the witnesses.

The case came on for jury trial July 12, 1991. Evidence on the first day of trial consisted primarily of testimony by plaintiff. Defendants, in their opening statement, had indicated that they intended to call Dr. Steg as an expert witness. On the second day of trial, July 15, plaintiff filed a motion in limine, asking the court for an order that defendants could not call any witnesses as experts nor ask questions calling for the expert opinions of any witnesses. Plaintiff's reason for requesting this order was that

defendants' responses to the interrogatories propounded by plaintiff to defendants did not identify or disclose any experts intended to be used by defendants and did not respond to proper interrogatory questions about expert witnesses; that defendants although having a duty to do so did not seasonably supplement their interrogatory responses as to experts.

(Emphasis omitted.) Brief for appellee at 20.

Defendants' attorney argued that Dr. Steg's identity had been disclosed in defendants' pretrial conference memorandum submitted at the pretrial conference held on October 25, 1990. Defendants' attorney stated that he discussed the thrust of Dr. Steg's testimony with plaintiff's attorney at the pretrial conference. Plaintiff's attorney denied any recollection of such a discussion. Defendants' attorney asked that if the court was inclined to grant plaintiff's motion in limine, the court continue the trial until the next term to allow plaintiff's attorney to depose Dr. Steg. The court overruled the motion to strike, conditioned upon defendants' attorney's providing a copy of Dr. Steg's report to plaintiff's attorney. In addition, the court stated that if plaintiff's attorney determined that it was

necessary to depose the doctor, a continuance would be granted "for as long as it would take for you to accomplish that deposition." Defendants were ordered to give plaintiff a copy of Dr. Steg's report, to supplement their responses to plaintiff's interrogatories, and also to comply with the continuing duty to supplement responses to the interrogatories. Plaintiff's counsel did not inform the court that he desired a continuance, but, rather, he entered a continuing objection to any opinion question that might be asked of Dr. Steg.

On July 17, after defendants' other witnesses had been called, but before Dr. Steg's testimony, plaintiff presented a further motion in limine, objecting to any expert testimony from Dr. Steg for the reason of failure until during the course of the trial to furnish any response to interrogatories regarding expert testimony. The court overruled part of the motion, but sustained the part of the motion which allowed plaintiff to have a continuing objection to each opinion question to Dr. Steg.

The jury found in favor of defendants. Plaintiff subsequently filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Plaintiff argued that there was insufficient evidence to support the verdict and that she had been deprived of a fair trial because defendants' attorney had failed to properly supplement the answers to plaintiff's interrogatories regarding Dr. Steg's identity and the substance and supporting grounds for his testimony and opinions.

The district court held that "plaintiff's motion for judgment notwithstanding or new trial is sustained for the reasons stated in paragraphs 2, 3, 4, 5, 6 and 7 of said motion." Those reasons were:

2. Error of law occurring at the trial.

3. Irregularity in the proceedings.

4. Orders and abuse of discretion whereby plaintiff was prevented from having a fair trial.

5. The verdict and decision are not sustained by sufficient evidence.

6[.] The verdict and decision are contrary to law.

7. Error in permitting over plaintiff's objection alleged expert opinion testimony although defendant [allegedly]

did not prior to trial disclose the required information as to expert opinions and the basis and grounds thereof and failed to seasonably respond to and supplement responses in regard to experts as to

a. The subject matter on which the expert is expected to testify.

b. The substance of the facts and opinions to which the expert is expected to testify.

c. A summary of the grounds for each opinion.

After the motion for judgment notwithstanding the verdict or for a new trial was argued and submitted, defendants' attorney took a deposition of Terry Dougherty, an attorney who was counsel for the occupants of the Honda in a separate action against defendants. Defendants' attorney moved to reopen the motion for judgment notwithstanding the verdict or for a new trial and offered the Dougherty deposition. The court overruled defendants' motion to reopen as untimely. The deposition and a June 3, 1991, letter from attorney Dougherty, which letter had attached to it copies of Dr. Steg's letter and report, were submitted as defendants' offer of proof regarding plaintiff's attorney's pretrial knowledge of Dr. Steg's identity and the foundation and substance of his anticipated testimony. Plaintiff does not deny receipt of copies of Dr. Steg's letter and report enclosed with attorney Dougherty's June 3 letter, but she contends that the report does not fully disclose the subject matter of the expected testimony.

## DISCUSSION

The Nebraska Discovery Rules provide for, among other things, discovery of expert witnesses and their expected testimony. In addition, under the rules of discovery, there is a continuing duty to supplement prior responses to interrogatories regarding expert witnesses. Neb. Ct. R. of Discovery 26 (rev. 1992) reads:

Rule 26. General Provisions Governing Discovery.

. . . .

(b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

. . . .

(4) Trial Preparation: . . . .

(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

. . . .

(e) Supplementation of Responses. A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his or her response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement his or her response with respect to any question directly addressed to

. . . .

(B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he or she is expected to testify, and the substance of his or her testimony.

The Nebraska Supreme Court stated in *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 537-38, 407 N.W.2d 146, 154 (1987):

Under Rule 26(e)(1)(B), there is an explicit duty seasonably to supplement a response to a request for discovery (here, a response to an interrogatory) directed toward identity of an expert witness expected to be called at trial, the subject matter of expected testimony from such expert, and the substance of the expert witness' expected testimony. As a consequence of Rule 26(e) and within the purview of that rule, a litigant has the right to have interrogatories answered and the duty to supplement answers previously given in response to an adversary's interrogatories, which is a continuing duty to supplement prior responses.

See, also, *Zarp v. Duff*, 238 Neb. 324, 470 N.W.2d 577 (1991).

Defendants in this case did not comply with the above-stated rule of discovery.

> A purpose of the discovery process is exploration of all available and properly discoverable information to narrow the fact issues in controversy so that a trial may be an efficient and economical resolution of a dispute. . . . Also, the discovery process provides adequate pretrial preparation as a basis for an informed cross-examiner and informative cross-examination. Further, the discovery process enables litigants to prepare for a trial without the element of an opponent's tactical surprise, a circumstance which might lead to a result based more on counsel's legal maneuvering than on the merits of the case. . . .
>
> As a result of Neb. Ct. R. of Disc. 26(b)(4)(A)(i) (rev. 1983), the liberal discovery of potential testimony of an expert witness is not merely for convenience of the court and litigants, but exists to make the task of the trier of fact more manageable by means of an orderly presentation of complex issues of fact.

(Citations omitted.) *Norquay*, 225 Neb. at 536-37, 407 N.W.2d at 153.

While *Norquay* can be read as authorizing the sanction of exclusion when a party's failure to abide by the rules of discovery results in the other party's detriment, that sanction is not mandatory. In *Nixon v. Harkins*, 220 Neb. 286, 369 N.W.2d 625 (1985), the trial court refused to grant the sanction of exclusion where the complaining counsel had been aware of the identity of the expert witness for the other side prior to the start of trial. The Supreme Court found no error in the receipt of evidence presented by and through the expert. Significant was the fact that the appellants had made no showing that their preparation for trial was hampered by the timing of the disclosure and that no request for a continuance was made at trial on that ground.

> In determining whether to exclude testimony of an expert witness called by a party who has failed to comply with a request for discovery, the trial court should consider the explanation, if any, for the party's failure to respond, or respond properly, to a request for discovery concerning an

expert witness; importance of the expert witness' testimony; surprise to the party seeking preclusion of the expert's testimony; needed time to prepare to meet the testimony from the expert; and the possibility of a continuance.

*Norquay*, 225 Neb. at 540, 407 N.W.2d at 155.

When a party has failed to . . . make supplemental responses required under Rule 26(e)(1)(B) of the Nebraska Court Rules of Discovery, and such noncomplying party calls an expert witness to offer testimony within the scope of the interrogatory in question, the adverse party must object to . . . testimony of an expert witness testifying about a previously undisclosed but discoverable matter sought to be disclosed by the interrogatory in question. If the court, over objection, allows such expert witness to testify, notwithstanding nondisclosure before trial, when appropriate the adverse party must move to strike the expert witness' testimony, request a continuance to give the surprised adversary an opportunity to investigate further and secure rebuttal evidence, or, under certain circumstances, move for a mistrial.

*Norquay*, 225 Neb. at 541-42, 407 N.W.2d at 156. See, also, *Zarp, supra.*

Continuance is ordinarily the proper method for dealing with a claim that there has been a failure to disclose in a timely manner. *Kane v. Parry*, 24 Conn. App. 307, 588 A.2d 227 (1991); *Rullo v. General Motors Corporation*, 208 Conn. 74, 543 A.2d 279 (1988). See, *Whitney v. Buttrick*, 376 N.W.2d 274 (Minn. App. 1985); *State v. Higginbotham*, 110 Wis. 2d 393, 329 N.W.2d 250 (Wis. App. 1982); *Gerhardt v. D.L.K.*, 327 N.W.2d 113 (N.D. 1982).

Although a motion to strike and a continuing objection were both made by plaintiff, plaintiff was also offered a continuance to depose the expert witness. Plaintiff's counsel in the instant case declined the court's offer of a continuance and made no attempt to depose Dr. Steg. Plaintiff declined the continuance by the renewal of her continuing objection to Dr. Steg's testimony as regarded his opinion and, thus, waived her right to complain about surprise. See *Cox v. New England Tel. & Tel.*

*Co.*, 414 Mass. 375, 607 N.E.2d 1035 (1993) (plaintiff argued that defendant's failure to make timely response to discovery requests required exclusion of defense witness' testimony, but the testimony was ruled admissible where plaintiff could have but did not ask judge for time to prepare cross-examination and did not take other steps following late receipt of discovery materials.) See, also, *Nixon, supra* (no error in receipt into evidence of a report where there was no showing that preparation for trial was hampered by failure of other party to list the report on pretrial order and where no request was made for a continuance); *Werner v. Dept. of Public Welfare*, 109 Pa. Commw. 134, 530 A.2d 1004 (1987) (expert testimony properly admitted where claimants failed to demonstrate prejudice from allegedly untimely disclosure of expert's identity and opinion and where claimants failed to request continuance).

Plaintiff did not move for a mistrial before the matter was submitted to the jury. Plaintiff had the opportunity to remedy the surprise which she alleged; she declined that opportunity and therefore cannot now be heard to complain of surprise. Plaintiff cannot fail to remedy the alleged prejudice and then, after the jury verdict is announced, be entitled to a new trial. In addition, there was never a showing by plaintiff that she was actually prejudiced by the failure of defendant to seasonably supplement the answers to interrogatories, for example, that she would have introduced more or different evidence or cross-examined Dr. Steg differently, had timely answers been provided. Finally, plaintiff evidently had more information than she admitted to having regarding Dr. Steg's identity and his report. The deposition of attorney Dougherty would have established that plaintiff knew of Dr. Steg, his report, and the sleep latency test results over a month before trial.

We find that plaintiff's motion for a new trial was improvidently granted. We reverse, and remand with directions to reinstate the verdict of the jury. Our holding in this case is in no manner a condonation of the failure of defendants to meet their obligation under the rules of discovery to supplement their responses to plaintiff's interrogatories.

## CROSS-APPEAL

In her cross-appeal, plaintiff contends that the district court erred in overruling her motion for directed verdict on liability.

A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion from the evidence. See *Baker v. St. Paul Fire & Marine Ins. Co.*, 240 Neb. 14, 480 N.W.2d 192 (1992). The party against whom the motion is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. See *id*. If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law. *Id*. A directed verdict is proper only when reasonable minds cannot differ and can only draw one conclusion from the evidence. *Kozeny v. Miller*, 243 Neb. 402, 499 N.W.2d 75 (1993). A trial court should only direct a verdict as a matter of law when the facts are conceded or undisputed. *Id*.

The issue of negligence was properly submitted to the jury, and plaintiff's assignment of error on cross-appeal that the trial court erred in overruling her motion for directed verdict has no merit. She also assigns as error, but does not discuss, her contention that the trial court erred in overruling her motion for judgment notwithstanding the verdict. To be considered by an appellate court, an error must be assigned and also discussed in the brief of one claiming that prejudicial error has occurred. See *Carlson v. Zellaha*, 240 Neb. 432, 482 N.W.2d 281 (1992).

REVERSED AND REMANDED WITH DIRECTIONS.