IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

VANLANINGHAM V. HARMON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JENNIFER VANLANINGHAM, APPELLEE,

V.

JOEL HARMON, APPELLANT.

Filed February 7, 2017.    No. A-15-608.

Appeal from the District Court for Sarpy County, WILLIAM B. ZASTERA, Judge, on appeal thereto from the County Court for Sarpy County, STEFANIE A. MARTINEZ, Judge. Judgment of District Court reversed, and cause remanded with directions.

Jason M. Bruno, James L. Schneider, and Jared C. Olson, of Sherrets, Bruno & Vogt, L.L.C., for appellant.

Ryan D. Caldwell, of Caldwell Law, L.L.C., for appellee.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Joel Harmon appeals from an order of the district court for Sarpy County affirming a judgment in favor of Jennifer VanLaningham entered by the county court. On appeal, Joel alleges that the county court erred in failing to grant his motion for directed verdict and to dismiss the action due to the absence of a necessary party, considering information not received in evidence, admitting various sources of evidence, and entering judgment against him despite Jennifer's failure to present sufficient evidence. Because we find that the court wrongfully considered information not received in evidence and erred in the receipt of certain exhibits, we reverse and remand with directions to grant Joel's motion for new trial.

- 1 -

BACKGROUND

On March 28, 2012, Jennifer closed on her purchase of residential real property located in Bellevue, Nebraska from Joel and Mary Lou Harmon. She also moved into the residence on this date. The Harmons owned the house for 13 years prior to the sale.

Previously, on February 11, 2012, pursuant to Neb. Rev. Stat. § 76-2,120(2) (Reissue 2009), the Harmons jointly executed and provided to Jennifer a "Seller Property Condition Disclosure Statement."

The Harmons indicated within this statement that there had not "been leakage/seepage in the basement or crawl space." Further, they specified that the home contained no "windows which presently leak" or "have broken seals." In the comments section, following the statement's survey of conditions, the Harmons stated that an insurance claim for roof replacement had been submitted due to hail damage occurring 6 to 7 years prior to the sale (2005-2006). Further, the Harmons stated that, to the best of their knowledge and belief, the disclosed condition of the house was accurate.

Jennifer did not seek additional information or documents from Joel, testifying that she "wouldn't think of asking something like that." Jennifer was allowed to view the residence prior to closing, and she conducted a walk-through during this time while accompanied by her father and real estate agent. She was never prevented from viewing or inspecting the house. Joel offered to pay for a home inspection and provide home warranty coverage to Jennifer, but she declined both proposals. According to Joel, Jennifer turned down these offers due to her difficulty getting a loan, and correspondingly so Joel "could pay for more of her closing costs."

On April 15, 2012, approximately 2½ weeks after Jennifer took possession of the property and began residing therein, a steady rainstorm occurred and flooded the basement of the house. Another heavy rainstorm occurred in May 2012, causing flooding of the basement for a second time. On both occasions, Jennifer claims the water was deep enough that "it covered the top of (her) toes." Jennifer attempted to mitigate future damage by removing shrubs, packing dirt up against the foundation, "mudjacking" the cement front steps, and putting longer drain spouts on all of the gutters on the house. While these actions temporarily alleviated water entry into the home, the basement once again experienced flooding following rain in September 2012, but to a lesser depth than before.

On each of these three occurrences of flooding, Jennifer removed the water using a shop vac. Additionally, in an effort to minimize damage to the basement, Jennifer removed the carpet, padding, and a cabinet. She also removed drywall, seeking the water's entry point. During the removal process, she discovered mold that "covered" the drywall along with rotted wood in the area of the cabinet. Specifically, the rotted wood was located below the first floor fireplace, which is also the ceiling of the basement. In addition to locating rotted wood, Jennifer observed that new wood had been added. Jennifer further determined that the east and southwest sides of the house, which are against the chimney and driveway respectively, were the source of water entry. She also found that windows located in these same areas of the home were leaking. In response, Jennifer and her father installed a deeper window well for a basement window located next to the chimney. She also replaced upstairs windows on the south side of the home which were leaking.

On January 4, 2013, Jennifer filed suit against Joel in small claims court. Joel thereafter removed the case to county court. On April 13, Jennifer filed a motion to join Mary Lou as a necessary party, alleging that Mary Lou is "a necessary party to this case because the Court cannot determine the controversy before it without prejudicing her rights" and "without her presence." The court granted this motion.

An amended complaint was filed on May 6, 2013. The complaint alleged that the Harmons falsely communicated that there had been no leakage or seepage in the basement, no windows that presently leaked, and no structural problems with the home. Jennifer alleged that she relied upon these representations in purchasing the home, that she discovered the aforementioned problems with the home following the purchase, and that she suffered damage due to the false representations. Jennifer's amended complaint included counts for detrimental reliance, violation of Neb. Rev. Stat. § 76-2,120 (Reissue 2009), fraudulent misrepresentation, negligent misrepresentation, and fraudulent concealment.

Mary Lou subsequently filed a motion to dismiss the amended complaint against her, asserting that it was barred by the 1-year period of limitation found within § 76-2,120. The motion to dismiss was sustained on July 15, 2013.

Joel filed a motion in limine which sought to exclude any evidence related, directly or indirectly, to a fireworks explosion that occurred in the residence's garage in 2002, along with the resulting police report and subsequent arrest, charges, and conviction of Joel arising from this incident. A July 1, 2014 docket entry shows that the court denied the motion with regard to general references to the explosion, stating that Jennifer is allowed "to at least bring up, to some extent, (that) the explosion occurred." As a result of a stipulation by Jennifer's attorney during the hearing, the court granted the motion in limine with regard to the police report and court case.

On October 3, 2014, a trial was held before the county court. Jennifer testified and presented the report and deposition of Jeffrey Ehler, a structural engineer who was hired by Jennifer to visually inspect the residence and develop a report of his findings.

Joel and Mary Lou testified, along with Jeff Hunziker, a general contractor serving as an expert witness. Exhibits admitted at trial included Joel's Supplemental Responses to Request for Production of Documents pertaining to Joel's insurance claim following the fireworks explosion; statements, invoices, and payment checks to various businesses for repairs made by Jennifer; invoice for mold assessment and report of findings; estimate for repair to chimney; Ehler's report; and Ehler's deposition.

Joel objected to the admission of these exhibits, primarily on the basis of relevancy, hearsay, and lack of foundation or authentication. The court overruled these objections. Regarding the supplemental discovery responses, exhibit 28, the court found the documents to be allowable as admissions of a party opponent. The court did not provide specific reasons for overruling Joel's objections to exhibits 11, 15, and 27. The court admitted Ehler's report and deposition, exhibits 20 and 29, on the basis of a prior stipulation by the parties allowing these exhibits. Additional exhibits were received, including photographs depicting water damage, rotted wood, and new installed wood, taken by Jennifer.

Jennifer's testimony centered on her observations of water leakage, the resulting damage, and efforts to alleviate the problem as described above.

On cross-examination, Jennifer admitted to having no evidence establishing that the windows leaked while Joel resided in the house. She also testified that she was not aware who had done the previous repair work (i.e., installation of new wood) or when it was done. While Jennifer took various actions to mitigate future leakage, she testified to having made no repairs to the damage based on the recommendations of professionals or contractors. However, Jennifer introduced evidence of a mold assessment with remediation recommendations and an estimate for chimney repairs, neither of which repairs had yet been done.

Ehler's report first found that a section of driveway adjacent to the home "has settled such that it no longer drains water away from the house." An open joint was found between the home and driveway into which water drains. Ehler determined that drainage resulting from the "wrongly sloped driveway" is "more likely than not the source of some water infiltration found in the lower basement corner." Ehler further reported, based on photographs provided to him, that "this moisture exposure from the driveway has been occurring since at least 2002."

The report also found "evidence of past moisture infiltration, wood rotting, and mold" in the basement area below the chimney. Further, it was noted that a section of oriented strand board had either rotted away or been removed, and a replacement section of lumber or sheathing had been placed over the missing material. Interior board walls were observed to have been removed, and the wood framing in this location had been replaced due to moisture damage.

Finally, the report noted that on the roof there is "no direct slope to allow water to flow around the chimney rather than directly into it," the "sealant was cracked and did not appear to be capable of preventing water infiltration," and that wood trim at the base of the chimney appeared to be "significantly weathered and rotted." In addition to the open driveway joint, Ehler identified this "odd condition of the roof sloping directly into the side of the chimney," with no curb to direct away water from the wood framed chimney, to be another probable source of water infiltration.

Ehler's deposition confirmed the findings in his report and provided additional detail regarding the report's findings. In addition to the water infiltration from the chimney and driveway, Ehler also testified that damage below a basement window was caused by prolonged water entry through the window well area. Ehler testified that the water damage did not occur in a short period, or even a year. Rather, Ehler indicated it would take several years for the damage to reach the extent he observed. According to Ehler, it appeared that the leaks had been an ongoing issue for a lengthy period, likely since at least 2002.

Ehler's report found a lack of visible evidence of recurring structural damage or loss of integrity in the garage area due to the explosion. Because of this finding, Jennifer withdrew her structural damage claim at trial.

Following Jennifer's case in chief, Joel's attorney moved for a directed verdict. In support of this motion, Joel's attorney argued that the court lacked jurisdiction over the case due to the prior dismissal of a necessary party, Mary Lou; Jennifer cannot bring an action under Neb. Rev. Stat. § 76-2,120 due to her failure to acknowledge in writing receipt of the disclosure statement; Jennifer failed to mitigate damages as required under Nebraska law; and the record lacked evidence of damages, evidence that the charges for repair work are fair and reasonable, and evidence of fraud, concealment, or knowledge of damage by Joel. The court denied this motion.

Hunziker, a contractor, testified on behalf of Joel. During a visit to the residence, Hunziker identified "a little water damage in the basement," specifically some removed drywall and stains on the concrete. Hunziker testified regarding a decorative stone retaining wall in front of the house, stating that the wall is "a good water trap" and "it can cause water to go down the foundation and come into the house." He could not identify any alternative causes for water entering the home, and believed that the water damage he observed in the basement was consistent with the wall being the source of the issue. Regarding Ehler's claim that water was entering the home through a joint in the driveway concrete, Hunziker testified that, while it is "highly unlikely," water could possibly get in there during a downpour. However, he claims such a problem could be cheaply remedied through caulking. Regarding the condition of the roof and chimney, Hunziker noted only some aging and wear.

On cross-examination, Hunziker admitted to observing rotted wood in the fireplace area of the basement that could have resulted from water damage and "maybe a little" water damage to a basement window near the fireplace. However, Hunziker left both of these items of damage out of his report. Regarding the area of the basement near the driveway joint, Hunziker admitted to observing water damage in this location, and that water could enter the house through the joint if a heavy downpour occurred.

Joel testified to having no personal knowledge of any leaking or seepage in the basement, leakage from windows or cracked seals, or the presence of mold at the time the disclosure statement was completed. He denied performing any repairs, or hiring anyone for repairs, to counter water leakage, seepage, or mold. Joel also denied replacing any rotted boards in the interior of the house, or being aware of any rotted boards being replaced therein. He claimed to have never encountered any of the problems experienced by Jennifer. Joel's affidavit and responses to requests for admissions, both offered into evidence by Jennifer's attorney, contained similar denials of knowledge.

Joel admitted that he inadvertently did not disclose an insurance claim on the disclosure statement pertaining to the fireworks explosion in the garage and resulting damage. Joel testified that he "did not even think about that damage . . . because all of those repairs were completed one hundred percent with no residual after effect," and he had simply forgotten about the incident. Joel denied that this omission was purposeful.

Mary Lou similarly testified to having no knowledge of water leakage, seepage, or mold in the house at the time the disclosure statement was completed. She further testified that Joel never told her about any such damage. Mary Lou confirmed that she assisted in the preparation of the disclosure statement.

Following Joel's case in chief, his attorney again moved for a directed verdict. In addition to reasserting the arguments supporting the original motion, Joel's attorney emphasized the lack of any structural damage caused by the garage explosion or failure to report the corresponding insurance claim, and that such a line of argument and related evidence was offered by Jennifer as a "red herring." Further, he argued that Jennifer failed to meet her burden of proving that Joel knew about any leaks in the residence. The court once again denied the motion.

At the conclusion of trial, the court took the matter under advisement. On December 17, 2014, the court entered an order in favor of Jennifer. The court stated:

There is no dispute as to whether or not there are defects and/or damages to the property. The prevailing issue in this case is whether or not [Joel] had personal knowledge of the defects to the property and with said knowledge, failed to fully disclose them on the seller's disclosure agreement pursuant to Neb. Rev. Stat. § 76-2,120. This issue, in large part, is determined by the credibility of the witnesses and the evidence received.

Although the parties agree that there is no structural damage to the home, the issue of an explosion in the garage is relevant in determining the weight of [Joel's] credibility. [Joel] testified that the explosion happened in 2003 [sic] due to fireworks that went off in his garage. There was significant damage to the garage that was repaired. He was cited for the fireworks and pled guilty in Sarpy County Court. [Joel] admitted that he omitted the explosion on the disclosure agreement, but did so because he forgot about it. The disclosure agreement did, however, list damage that occurred by a hail storm in 2006 or 2007. The inconsistences in [Joel's] testimony is (sic) taken into consideration in determining the weight given to his testimony.

The court found Jennifer's testimony, coupled with exhibits 2, 3, 4, 5, 6, 7 (the disclosure statement), 8 (the real estate advertisement), 9 (photographs), 12 (correspondence between counsel and photographs), 20 (Ehler report), and 29 (Ehler deposition), to be compelling. The court specifically noted Ehler's report and testimony that the defects in the driveway had been present since 2002, the prior repairs that had been made to an area of the basement where water damage was observed, and "the affidavit of John Walker and his observations of the disrepair of the home and the chimney area where water leaking ultimately occurred." As addressed below, no testimony or affidavit by Walker was offered or received into evidence at trial, and such information is absent from the record. In addition, there were no exhibits number 2 through 6 received in evidence and they are not part of our record on appeal.

The court concluded, "by greater weight of the evidence," that Joel "knew about the defects in the home and failed to disclose them on the Seller's Property Disclosure," finding that Jennifer had met her burden. The court granted Jennifer's amended complaint as to four counts: detrimental reliance, violation of Neb. Rev. Stat. § 76-2,120, negligent misrepresentation, and fraudulent concealment.

In assessing damages, the court relied upon the statements, invoices, estimates, evidence of payment, and an attorney fee affidavit introduced by Jennifer, as well as Neb. Rev. Stat. § 76-2,120 permitting plaintiffs to recover "actual damages, court costs, and reasonable attorney's fees." Neb. Rev. Stat. § 76-2,120(12) (Reissue 2009). The court awarded Jennifer damages and attorney fees in the amount of $14,331.18, with $8,562.52 allotted to attorney fees and the remaining $5,768.66 covering repair costs.

On December 26, 2014, Joel filed a motion for new trial and a motion to alter and amend, which was heard by the court on January 9, 2015. Among other things, Joel argued that the court's order was founded upon evidence that was either improperly admitted at trial or was not admitted at all; specifically the reference to Joel being cited for the fireworks and pleading guilty, and the reference to John Walker's affidavit.

- 6 -

Jennifer conceded that Joel's prior citation and Walker's affidavit were not offered into evidence at trial and should not have been considered by the court. However, Jennifer insisted that undisputed and stipulated evidence presented at trial was sufficient to support the judgment.

At the conclusion of the hearing, the court denied these motions. The court noted that the fireworks citation and plea were not the entire basis for the court's determination of Joel's credibility. The court also indicated that after removing Walker's affidavit from consideration, there were still 10 other exhibits that were taken into consideration in making its determination.

On January 26, 2015, Joel appealed to the district court for Sarpy County. On June 25, the district court issued an opinion affirming the county court's judgment. Viewing the evidence and testimony that was offered in a light most favorable to Jennifer, the district court found the county court's judgment was not clearly erroneous.

Joel subsequently perfected this appeal.

## ASSIGNMENTS OF ERROR

Joel assigns, restated, that the county court, as affirmed by the district court, erred in (1) denying Joel's motion for directed verdict, (2) failing to dismiss the case due to the absence of a necessary party, (3) considering evidence that was not offered or admitted, (4) admitting Joel's Supplemental Responses to Request for Production of Documents into evidence, (5) admitting various other exhibits into evidence, (6) entering judgment against Joel despite Jennifer's failure to present sufficient evidence of damages or proximate cause, and (7) denying Joel's motion for a new trial and motion to alter or amend.

## STANDARD OF REVIEW

The district court and higher appellate courts generally review appeals from the county court for error appearing on the record. *Griffith v. Drew's LLC*, 290 Neb. 508, 860 N.W.2d 749 (2015). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *Id.*

In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, which an appellate court will not disturb on appeal unless clearly wrong. And an appellate court does not reweigh the evidence but considers the judgment in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party. *Id.* Similarly, in such an action, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Henderson v. City of Columbus*, 285 Neb. 482, 827 N.W.2d 486 (2013). An appellate court will not reevaluate the credibility of the witnesses or reweigh testimony but will review the evidence for clear error. *Id.*

In reviewing rulings on motions for directed verdict, an appellate court gives the nonmoving party the benefit of all evidence and reasonable inferences in his or her favor, and the question is whether a party is entitled to judgment as a matter of law. *Arens v. NEBCO, Inc.*, 291 Neb. 834, 870 N.W.2d 1 (2015).

The presence of necessary parties to a suit is a jurisdictional matter that cannot be waived by the parties; it is the duty of the plaintiff to join all persons who have or claim any interest that would be affected by the judgment. *Pestal v. Malone*, 275 Neb. 891, 750 N.W.2d 350 (2008). When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decision made by the lower court. *Id.*

In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927, 857 N.W.2d 816 (2015). The admission of evidence is reviewed for abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Prime Home Care v. Pathways to Compassion*, 283 Neb. 77, 809 N.W.2d 751 (2012).

Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds. *Arens v. NEBCO, Inc.*, 291 Neb. 834, 870 N.W.2d 1 (2015).

A court must determine whether there is sufficient foundation evidence for the admission of physical evidence on a case-by-case basis. Because authentication rulings are necessarily fact specific, a trial court has discretion to determine whether evidence has been properly authenticated. An appellate court reviews a trial court's ruling on authentication for abuse of discretion. *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008).

An appellate court reviews the denial of a motion for new trial or to alter or amend the judgment for an abuse of discretion. *Mandolfo v. Mandolfo*, 281 Neb. 443, 796 N.W.2d 603 (2011).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

## ANALYSIS

### MOTION FOR DIRECTED VERDICT

Joel argues that he was entitled to a directed verdict because there was no evidence demonstrating his actual knowledge of defects with the residence. Under Neb. Rev. Stat. § 76-2,120(8), a seller is not liable for any error, inaccuracy, or omission of any information in the written disclosure statement of the real property's condition if the error, inaccuracy, or omission was not within the personal knowledge of the seller. Under the other causes of action--negligent misrepresentation and fraudulent concealment--knowledge of the person making the representation of its falsity or knowledge of the concealed fact is a necessary element for a plaintiff to prove. See, *Nelson v. Wardyn*, 19 Neb. App. 864, 820 N.W.2d 82 (2012); *Zawaideh v. Nebraska Dept. of Heath & Human Servs.*, 280 Neb. 997, 792 N.W.2d 484 (2011).

Joel claims that the evidence Jennifer introduced, particularly Joel's affidavit and responses to requests for admissions, proved that he did not have knowledge of any water leakage. Joel

further points to Jennifer's testimony that she did not have any evidence that leakage occurred while Joel owned the home, or that he performed the repair work she discovered upon taking down drywall. Joel asserts that Jennifer's "speculation" that Joel knew about the leaks was insufficient to sustain her burden of proof.

We conclude that the evidence was sufficient to withstand a directed verdict. Jennifer adduced evidence that the basement flooded on three occasions shortly after she took possession of the home. Ehler maintained that the damage resulting from the leaks was an ongoing issue for years, since at least 2002, at which point Joel owned and possessed the house. Evidence was presented to suggest that recent repairs had been done to the basement to address the leakage problem, which were not discovered until Jennifer removed some drywall.

Upon our review, giving Jennifer the benefit of every controverted fact and all reasonable inferences from the evidence, we find that the court properly denied Joel's motion for a directed verdict. The record contained evidence about which reasonable minds could differ regarding Joel's knowledge of the water leakage. On the basis of such evidence, Joel was not entitled to judgment as a matter of law.

Joel's first assignment of error is without merit.

JOINDER OF NECESSARY PARTY

Joel assigns as error the trial court's failure to dismiss the case due to the absence of a necessary party; Mary Lou. Although Jennifer initially sued only Joel in small claims court, she later successfully moved in county court to have Mary Lou joined as a necessary party and Jennifer then filed an amended complaint including Mary Lou as a defendant. However, Mary Lou later moved to be dismissed from the lawsuit, which motion was granted.

An indispensable or necessary party to a suit is one whose interest in the subject matter of the controversy is such that the controversy cannot be finally adjudicated without affecting the indispensable party's interest, or which is such that not to address the interest of the indispensable party would leave the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. *American Nat. Bank v. Medved*, 281 Neb. 799, 801 N.W.2d 230 (2011). The presence of necessary parties to a suit is a jurisdictional matter that cannot be waived by the parties; it is the duty of the plaintiff to join all persons who have or claim any interest that would be affected by the judgment. *Shaffer v. Nebraska Dept. of Health & Human Servs.*, 289 Neb. 740, 857 N.W.2d 313 (2014). If necessary parties to a proceeding are absent, the district court has no jurisdiction to determine the controversy. *Medved, supra.*

Joel argues that Jennifer judicially admitted Mary Lou was a necessary party within the language of her Motion to Join Necessary Party and Amended Complaint. Joel asserts that because of this admission, the court lacked jurisdiction to proceed without Mary Lou, and therefore the case should have been dismissed.

We conclude that the trial court did not err in failing to dismiss the action for lack of a necessary party. Jennifer did in fact join Mary Lou in the suit but Mary Lou was later dismissed as a party upon her own motion. Thus, her interest in the controversy was protected. Further, Mary Lou appeared at trial and her testimony was consistent with Joel's testimony; namely, that they

did not have any knowledge of water leakage or defects with the property. In sum, the controversy was clearly resolved despite Mary Lou's absence as a party defendant.

Joel's second assignment of error is without merit.

CONSIDERATION OF EVIDENCE OUTSIDE RECORD

Joel asserts that the trial court erred in its consideration and reliance upon two items that were not received in evidence; the fireworks citation against Joel and his guilty plea thereto, and an affidavit of John Walker. It is undisputed that the record does not contain any documentation or testimony about either of these items. Further, consideration of the criminal case against Joel arising from the fireworks explosion was a violation of the court's prior grant, in part, of Joel's motion in limine. Clearly, it was error for the court to consider these items. Unless an exhibit is marked, offered, and accepted, it does not become part of the record and cannot be considered as evidence in the case. *Zannini v. Ameritrade Holding Corp.*, 266 Neb. 492, 667 N.W.2d 222 (2003).

Jennifer admits that the court's consideration of these matters not received into evidence was improper. However, she argues that such consideration did not amount to prejudicial error requiring reversal.

In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Arens v. NEBCO, Inc.*, 291 Neb. 834, 870 N.W.2d 1 (2015). Error in the admission of evidence is presumed to be prejudicial when the evidence admitted may have influenced the verdict or affected unfavorably the party against whom it was admitted. *Jackson v. Brotherhood's Relief & Comp. Fund*, 273 Neb. 1013, 734 N.W.2d 739 (2007). Where it cannot be gleaned from the record that evidence wrongfully admitted did not affect the result of the trial unfavorably to the party against whom such evidence was admitted, reception of that evidence must be considered prejudicial error. *Id.*

The erroneous admission of evidence in a bench trial is not reversible error if other relevant evidence, properly admitted, sustains the trial court's necessary factual findings; in such case, reversal is warranted only if the record shows that the trial court actually made a factual determination, or otherwise resolved a factual issue or question, through the use of erroneously admitted evidence. *Griffith v. Drew's LLC*, 290 Neb. 508, 860 N.W.2d 749 (2015).

The county court's written order clearly references and relies upon matters that were not contained in the record. First, the reference to the fireworks conviction was contained in the paragraph in which the court determined the weight of Joel's credibility as it related to his failure to include the fireworks explosion on the disclosure statement. Second, the reference to the affidavit of John Walker and "his observations of the disrepair of the home and the chimney area where water leaking ultimately occurred" is contained in the paragraph describing the evidence that the court determined to be "compelling".

In ruling on the motion for new trial, the county court found that these two errors did not require reversal. With regard to the fireworks citation/plea reference, the court indicated that this reference was not the entire basis for the court's decision on Joel's credibility. With regard to the Walker affidavit, the court indicated that "there were still 10 other exhibits that were taken into consideration" in making its determination.

The county court's reference to "10 other exhibits" to support its determination that the erroneous reference to two exhibits not received in evidence did not warrant reversal compounds the problem in this case. In its original order, in the paragraph describing the evidence that the court determined to be "compelling", it referenced eleven exhibits, including five exhibits which were not received in evidence and are not part of the record before us (exhibits 2, 3, 4, 5, and 6). It is logical to assume that the court was referencing the exhibits it found compelling in the first place to support its determination that a new trial was not warranted. We recognize that neither party complained of the trial court's reference to exhibits not contained in the record beyond the fireworks citation and the Walker affidavit, and such error has not been assigned on appeal. However, we conclude that to disregard the court's reliance on numerous exhibits that were not received in evidence would unfairly deprive Joel of a substantial right. While an appellate court resolves evidentiary conflicts in favor of the successful party, we are unable to do so in this case when much of the information relied upon by the trial court as "compelling" was not received in evidence. Although the trial court made credibility determinations which we give weight to on appeal, in this case, we simply cannot defer to this determination when we are unable to determine whether the other "compelling" evidence supports this determination.

Upon our review, we find that the court's wrongful consideration of matters not admitted into evidence was prejudicial error. Although the court's comments above indicate that other properly admitted evidence could have sustained the court's factual findings, the court nevertheless clearly made credibility and factual determinations through the use of erroneously considered information that was not admitted in evidence. We cannot say that the information wrongfully considered did not unfavorably affect Joel or affect the result of the trial.

Because the county court erred in considering matters outside of the properly admitted evidence in making its determination, we conclude that Joel's motion for new trial should have been sustained. We therefore reverse the order of the district court which affirmed the county court orders and remand with directions to the district court to direct the county court to vacate its order in favor of Jennifer and to grant Joel's motion for new trial.

ADMISSIBILITY OF SUPPLEMENTAL RESPONSES TO
REQUEST FOR PRODUCTION OF DOCUMENTS

Joel assigns error to the trial court admission of exhibit 28, which contains documents pertaining to his insurance claim for damages to the garage area of the residence resulting from the fireworks explosion in 2002. Although we are reversing the county court's decision, we address this evidentiary claim as it may arise again during a new trial. See *Fitzgerald v. Community Redevelopment Corp.*, 283 Neb. 428, 811 N.W.2d 178 (2012) (appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings).

While Joel's objection to the admissibility of his supplemental responses to request for production of documents at trial was based upon various theories, Joel only argues on appeal that these documents were not properly authenticated, and therefore lacked proper foundation.

Documentary evidence is not admissible unless it is authenticated. See Neb. Rev. Stat. § 27-901 (Reissue 2008). Neb. Rev. Stat. § 27-901(1) (Reissue 2008) provides: "The requirement

of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Neb. Rev. Stat. § 27-901 does not impose a high hurdle for authentication or identification. *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008).

A proponent may authenticate a document under Neb. Rev. Stat. § 27-901(2)(a) (Reissue 2008) by the testimony of someone with personal knowledge that it is what it is claimed to be, such as a person familiar with its contents. But that is not the exclusive means. Under Rule 901(2)(d) (Reissue 2008), a proponent may authenticate a document by circumstantial evidence, or its appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances. *Draganescu*, 276 Neb. at 473, 755 N.W.2d at 82.

The Supplemental Responses to Request for Production of Documents contained various receipts, estimates, and letters created by third parties, pertaining to the garage fireworks explosion and resulting insurance claim. The exhibit was offered during Jennifer's examination without testimony that she had any personal knowledge of the documents. However, Joel in his cross-examination acknowledged that he produced the documents to his attorney in response to the request for production of documents, and more importantly, he agreed that the documents contained in the exhibit were documents pertaining to his insurance claim from the explosion, the damage, and the repairs.

Given the low hurdle that is required by § 27-901 for authentication or identification of documents, we conclude that the court did not abuse its discretion in admitting exhibit 28 into evidence. There was sufficient evidence to demonstrate that the documents contained in the exhibit related to Joel's insurance claim for the explosion and the resulting damage and repairs. The admission of these documents did not unfairly deprive Joel of a substantial right or just result. This is particularly true since Jennifer abandoned her claim that Joel failed to disclose structural damage to the property resulting from this explosion.

Joel's fourth assignment of error is without merit.

### Admissibility of Other Exhibits (Invoices, Payments, and Estimates and Ehler's Report and Deposition)

Joel asserts that the trial court erred in receiving exhibits 11 (invoices, payments, and estimates for repairs to Jennifer's house), 15 (invoice regarding mold assessment), 20 (Ehler report), 27 (roofing estimate), and 29 (Ehler deposition). Joel argues that the exhibits were inadmissible hearsay and lacking foundation. Again, although we are reversing the county court's order, we address these evidentiary issues as they may arise again on retrial.

The court received Ehler's report and deposition after the parties stipulated to allowing both of these exhibits into evidence without objection at the beginning of trial. Joel cannot now complain about the admission of these exhibits. See *Shearer v. Shearer*, 270 Neb. 178, 700 N.W.2d 580 (2005) (parties are bound by stipulations that are voluntarily made, and relief from such stipulations is warranted only under exceptional circumstances).

We now turn to an examination of whether the remaining exhibits (11, 15, and 27) were inadmissible hearsay. Joel argues that there was no testimony from the authors of these exhibits and they are out-of-court statements offered for the truth of the matter asserted, i.e., the cost of

repairing the damage to the residence. Jennifer asserts that the exhibits were properly admitted under the residual exception to the hearsay rule, which excepts:

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (a) the statement is offered as evidence of a material fact, (b) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (c) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his or her intention to offer the statement and the particulars of it, including the name and address of the declarant.

Neb. Rev. Stat. § 27-803(23) (Reissue 2008).

The residual hearsay exception is to be used rarely and only in exceptional circumstances. *State v. Garner*, 260 Neb. 41, 614 N.W.2d 319 (2000). An appellate court will affirm a trial court's ruling on whether evidence is admissible under the residual hearsay exception unless the trial court has abused its discretion. *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006).

When the exhibits in question were objected to by Joel on the basis of hearsay, there was no argument by Jennifer that the exhibits were admissible under the residual hearsay exception. The trial court did not provide a reason for overruling the hearsay objection and did not make any specific determinations or a ruling to support application of this exception as contemplated by the rule. Based upon our review of the record, we conclude that these exhibits were inadmissible hearsay, and that no exceptional circumstances existed to support the rare application of this exception. The county court erred in receiving exhibits 11, 15, and 27.

### EVIDENCE OF DAMAGES OR PROXIMATE CAUSE

Joel argues that Jennifer failed to provide any evidence of legally recoverable damages. Because we are reversing and remanding with directions to grant Joel a new trial, we need not address this assigned error further. *Flores v. Flores-Guerrero*, 290 Neb. 248, 859 N.W.2d 578 (2015) (appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it).

### MOTION FOR NEW TRIAL AND MOTION TO ALTER OR AMEND

As we stated above, the county court abused its discretion in failing to grant Joel's motion for new trial as a result of the court's erroneous reliance on information that was not received in evidence. Thus, we reverse the decision of the district court which affirmed the county court and remand with directions.

### CONCLUSION

The county court did not err in denying Joel's motion for directed verdict, in denying Joel's request to dismiss the case for lack of jurisdiction due to the absence of a necessary party, and in

admitting exhibit 28 into evidence. However, the county court abused its discretion in considering information not received in evidence and in receiving exhibits 11, 15, and 27. Accordingly, the county court abused its discretion in failing to grant Joel's motion for new trial on the basis of these errors and the district court erred in affirming the orders of the county court. We reverse the order of the district court and remand with directions to the district court to direct the county court to vacate its orders and to grant Joel's motion for new trial.

REVERSED AND REMANDED WITH DIRECTIONS.

BISHOP, Judge, dissenting.

I would affirm the district court's order, which affirmed the county court's decision in this case. Since this case turns on what Joel knew or did not know when he completed the seller disclosure statement, the believability of his testimony as considered against other evidence was significant. While Joel did affirmatively mark the disclosure statement (section D, question 13) to show he had made an insurance claim with regard to the property, he only identified a hail damage claim. Joel testified that he forgot about the insurance claim related to the fireworks explosion. However, other evidence challenges the believability of this alleged forgetfulness, and for the fact finder, this may have adversely impacted Joel's credibility regarding other undisclosed defects in the house. And since the trial court is the sole judge of the credibility of the witnesses and weight to be given their testimony, *Henderson v. City of Columbus*, 285 Neb. 482, 827 N.W.2d 486 (2013), I would defer to the county court's decision since it is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

Exhibit 28 (Joel's supplemental discovery responses) is an example of evidence challenging Joel's believability with regard to his claimed forgetfulness about the insurance claim filed for the fireworks explosion. This exhibit contains a number of items related to that claim, such as: an estimate for repairs from John Folsom for $4,080 and another estimate from Repairs Unlimited for $5,111.76; an undated letter from Joel to Miquella Huerta (a claims representative for USAA, Joel's homeowners insurance carrier at that time) in which Joel states he has selected Folsom over Repairs Unlimited, that he knows "USAA is really trying to push Repairs Unlimited," and to contact Joel if there were questions on why he did not pick Repairs Unlimited; and a February 3, 2003, letter from USAA cancelling Joel's homeowners policy effective April 17 "due to the hazardous materials that are being used and stored on your residence premises . . . a substantial change in the risk since the inception of the policy." Notably, the repair estimates themselves suggest the nature of the work should not have been easily forgettable. For example, the Folsom estimate reflects that the repair work would involve removing the ceiling in the damaged area, repairing plumbing damage in the ceiling, removing drywall on both sides of the garage and basement wall, moving a wall between the garage and laundry room back into the original location, replacing insulation, new drywall, painting, fixing holes inside the house by the garage entry door, replacing a burnt screen door screen, removing old garage doors and replacing with new doors. This was not a minor project. Additionally, Joel took time to secure a second estimate, write a letter to USAA regarding his selection of a contractor he preferred over USAA's recommended contractor, and on top of this, Joel had his homeowners insurance cancelled. To say that the "explosion insurance claim happened quite a while ago and I just - actually, I did forget it

- 14 -

. . . didn't think of it when I filled out the form[,]" strains credibility when considered with this other evidence. The county court specifically noted that credibility was an issue, and such a determination could have been made without consideration of the erroneous information referenced in the county court's order, which is discussed next.

The majority concludes that the county court's determinations with regard to credibility and the evidence included the wrongful consideration of matters not admitted into evidence, and further, that this constituted prejudicial error warranting a new trial. The majority reaches this decision based upon three erroneous considerations by the county court: (1) Joel's citation for fireworks and guilty plea; (2) the affidavit of John Walker; and (3) exhibits 2, 3, 4, 5, and 6, which are not contained in the record. As to the last item, neither party raised the absence of exhibits 2 through 6 in any post-judgment pleadings or at the hearing on Joel's motions for new trial or to alter or amend, nor on appeal to the district court, nor in the briefs to this court. Joel has complained only about the county court's reference to the fireworks citation/conviction and to the Walker affidavit. Given that neither party complains about the absence of exhibits 2 through 6, and in light of other properly admitted evidence in the record, the absence of these documents in our record does not constitute plain error. Accordingly, I discuss only the two erroneous references in the court's order, as complained about by Joel, and whether eliminating that information from the county court's consideration would have required a different outcome. In this case, we have the county court judge specifically saying it would not have made a difference, as addressed next.

Following entry of judgment on December 17, 2014, Joel filed a timely motion to alter or amend on December 26. In that motion, Joel alleged that the county court's December 17 order "was founded upon materials that were either improperly admitted into or not in evidence. Without such materials, a ruling in favor of [Joel] would be required." Joel also separately filed a motion for new trial on the same day, alleging, in relevant part, that the court "based its Opinion upon what it deemed to be the lack of credibility of [Joel]. The Court's finding was dependent upon [Joel] being criminally cited for a fireworks violation and plea of guilty to a crime[,]" and that the court erred "in relying upon such matters as [Joel] does not believe there was any evidence offered or admitted at trial" related to a fireworks violation or plea, that a motion in limine had been granted excluding the mention of such matters, and the court "relied upon the very matters that it had previously determined to be both irrelevant and unduly prejudicial to [Joel]." Joel also alleged the court relied upon the affidavit of John Walker which had not been offered or received at trial.

On January 9, 2015, Joel's motion for new trial, motion to alter or amend, and motion to set supersedeas bond, came before the county court. Joel's attorney argued that the court considered matters outside of evidence, specifically any reference to a criminal citation or conviction and the Walker affidavit. Jennifer's attorney agreed "the citation/conviction should not have been used by the Court and was not offered by [Jennifer][,]" and the attorney did not know "how it got in the ruling." Jennifer's attorney noted that "it's in the file," but was not offered, and "the John Walker affidavit" was "in the file from previous hearings, but was not offered into evidence at trial."

After setting forth a summary of the other evidence, Jennifer's attorney argued that the motion for new trial should be denied, but "that perhaps the judgment should be altered or amended . . . to remove those references to evidence that was not before the Court at trial, which is the

- 15 -

conviction and the affidavit, which were not offered as evidence[.]" Jennifer's attorney agreed that the ruling "should be amended to take those out." However, Joel's attorney responded that "[it would] be nice if we could just make a quick eraser and change the parts of the order that [opposing counsel] doesn't like. Unfortunately, that's not the way it works. The determinations of [Joel's] credibility were based upon evidence that was not in the record." The county court disagreed, stating:

> Okay. Based on the order that was entered by the Court, I think it's clear that what went into the Court's decision on credibility was larger than just the citation and that paragraph specifically indicates he testified to certain evidence in regard to that explosion, which was also taken into consideration, so omitting the sentence that says he was cited for fireworks and pled guilty doesn't change the basis. That was not the entire basis for the Court's decision on his credibility.
>
> Taking in - removing, again, the affidavit from Mr. Walker, there were still 10 other exhibits that were taken into consideration again to make the Court's determination so I think those two having been made or considered in error do not make a sufficient finding of the reversal of the Court's decision nor granting of the motion for a new trial. So I'm going to deny the motion for a new trial. I am happy to grant the motion to amend and alter the order, and strike those two sentences.

Joel's attorney declined the trial court's offer to amend the order, saying that "the basis behind the motion to alter or amend, Your Honor, is that the judgment be thrown out, not that a few lines and sentences be fixed. That's nonsensical." Joel's attorney went on to say, "The motion for new trial is requesting a new trial. The motion to alter or amend is to vacate the order in favor of [Jennifer] and grant an order in favor of [Joel]."

As noted by the majority, the erroneous admission (or in this case, consideration) of evidence in a bench trial is not reversible error if other relevant evidence, properly admitted, sustains the trial court's necessary factual findings; in such case, reversal is warranted only if the record shows that the trial court actually made a factual determination, or otherwise resolved a factual issue or question, through the use of erroneously admitted evidence. See *Griffith v. Drew's LLC*, 290 Neb. 508, 860 N.W.2d 749 (2015). In this case, the county court specifically explains that its "decision on credibility was larger than just the citation," noting that Joel testified about the explosion, which the court stated was also taken into consideration. The court says that "omitting the sentence that says he was cited for fireworks and pled guilty doesn't change the basis. That was not the entire basis for the Court's decision on his credibility." In addition to Joel's own testimony about the fireworks explosion, exhibit 28 is a compelling example of other properly admitted evidence adversely affecting Joel's credibility, as discussed earlier.

Additionally, as to the erroneous reference to the Walker affidavit, the county court pointed out there were "still 10 other exhibits that were taken into consideration again to make the Court's determination[.]" The majority is not satisfied by this explanation, however, because it concludes that "five of those exhibits were not received in evidence and are not contained in our record." But it is not clear exactly which "10 other exhibits" the county court meant. The majority apparently

interprets the reference to "10 other exhibits" to mean only the specific exhibits listed in the portion of the county court's order, wherein the court stated,

> This Court finds the testimony of [Jennifer] coupled with Exhibits 2, 3, 4, 5, 6, 7, 8, 9, 12, 20 and 29, to be compelling; specifically, the deposition and report of Jeffrey Eiler [sic] that the defects in the driveway had been present since 2002 . . . as well as repairs that had been made to an area in the basement where water damage was observed, and the affidavit of John Walker and his observations of the disrepair of the home and the chimney area where water leaking ultimately occurred.

However, at the time of the hearing on the post-judgment motions when the county court judge referenced "10 other exhibits" to support its decision, there is no indication as to whether this was just a random number provided (given that there were 20 exhibits offered and received at trial) or whether the court had a specific 10 exhibits in mind. In my opinion, it does not matter. The county court specifically stated that the erroneous references did not warrant reversal and offered to amend the order accordingly. Hearing this directly from the fact finder establishes there was no prejudice to Joel--the court was made aware of the erroneous references, acknowledged the error, and specifically concluded that other evidence in the record still supported its decision with regard to facts and credibility.

As to whether other evidence in the record supported the county court's ultimate decision, the majority's analysis on Joel's motion for a directed verdict provides an answer. The majority concludes that the county court properly denied Joel's motion for a directed verdict because "reasonable minds could differ regarding Joel's knowledge of the water leakage." This includes evidence of the basement flooding on three occasions shortly after Jennifer took possession of the home, Ehler's testimony that the damage resulting from the leaks was an ongoing issue since at least 2002 (at which time Joel owned and possessed the home), and evidence of recent repairs done to the basement to address the leakage problem, which repairs were not discovered until Jennifer removed some drywall. All of this evidence was properly admitted and supports the county court's ultimate decision. And none of it was adversely affected or in any way "tainted" by the county court's erroneous one-line reference to Joel being "cited for fireworks and [pleading] guilty in Sarpy County Court[,]" nor its erroneous reference to John Walker's affidavit with "observations of the disrepair of the home and the chimney area where water leaking ultimately occurred."

Finally, the majority concludes exhibits 11 (invoices for repairs to Jennifer's house), 15 (invoice for mold assessment report), and 27 (roofing estimate), were inadmissible hearsay and should have been excluded. Whether they should have been excluded or not, I nevertheless conclude their exclusion would not impact the county court's ability to determine damages as awarded. As to exhibit 11, Jennifer testified as to her personal knowledge related to the work performed to replace a window, the mudjacking, and landscaping. The bills for that work were addressed to her and/or her home address, so she had personal knowledge of the charges, and she testified, without objection, that her parents paid those bills. As for exhibit 15, Jennifer testified, without objection, that she was charged $250 for the mold assessment and report. And finally, as to exhibit 27, Jennifer testified that she had a roofing company give her an estimate for the flashing

and shingles for the roof and chimney, and she testified, without objection, that the amount was $500.

Whether or not a plaintiff has sustained damage is a question of fact. *Batterman v. Richardson*, 189 Neb. 303, 202 N.W.2d 613 (1972). In cases involving generally the issue of proof of damages by subjective oral testimony, the evidence of damages must be direct and certain. *Id*. Expert testimony is not legally necessary when damages are objective and conclusions to be drawn from proved basic facts do not require special technical knowledge or science. See *Yount v. Seager*, 181 Neb. 665, 150 N.W.2d 245 (1967) (direct expert evidence is not necessary as a general rule to establish permanency or future effects of an injury; the test is whether or not the particular issue can be determined from the evidence presented and the common knowledge and usual experience of jurors). See, also, *Orduna v. Total Constr. Servs.*, 271 Neb. 557, 713 N.W.2d 471 (2006) (amount of damages to be awarded is a determination solely for the fact finder, and the fact finder's decision will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages).

I conclude that based on the evidence presented, the county court was in a position to determine damages as set forth in its order. The trial court's factual findings have the effect of a jury verdict which we should not disturb on appeal unless clearly wrong, and I conclude the county court's decision is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Further, we are not to reweigh the evidence and we must resolve evidentiary conflicts in favor of the successful party. And importantly, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. See *Henderson v. City of Columbus*, 285 Neb. 482, 827 N.W.2d 486 (2013); *Griffith v. Drew's LLC*, 290 Neb. 508, 860 N.W.2d 749 (2015).

In summary, in its December 17, 2014, order, the county court noted that there was no dispute regarding the defects or damages to the property. Rather, "[t]he prevailing issue in this case is whether or not [Joel] had personal knowledge of the defects to the property and with said knowledge, failed to fully disclose them on the seller's disclosure agreement" as required by law. The court further stated, "This issue, in large part, is determined by the credibility of the witnesses and the evidence received." The county court specifically informed the parties that its decision regarding credibility was "larger" than the erroneous references in its order, and those references were "not the entire basis for the Court's decision on [Joel's] credibility." Since the record contains other properly admitted evidence to support the county court's decision, like the district court, I would affirm.